358 So.2d 964 (1978)
LAWYERS TITLE INSURANCE COMPANY
v.
CAREY HODGES & ASSOCIATES, INC., and Paul J. Morel.
No. 11758.
Court of Appeal of Louisiana, First Circuit.
February 13, 1978.
*966 Paul M. Hebert, Baton Rouge, of counsel for plaintiff-appellant Lawyers Title Insurance Corp.
Jack Roberts, Jr., Baton Rouge, of counsel for defendant-appellee Carey Hodges Associates, et al.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Lawyers Title Insurance Company (Appellant) subrogee of its insured, Lowe's Companies, Inc. (Lowe's), appeals dismissal of its subrogated demand against defendants Carey Hodges & Associates, Inc. (Surveyor) and Surveyor's employee Paul J. Morel, for reimbursement of a claim paid Lowe's pursuant to a policy of title insurance issued by Appellant covering a parcel of land purchased by Lowe's on the strength of a survey by Surveyor. The survey erroneously located drainage facilities on Lowe's land which in reality were on neighboring land. Relying on the survey, Lowe's planned its drainage to utilize the facilities indicated as being on its property. The error was discovered after Lowe's installed its drainage. The work installed by Lowe's had to be removed and new facilities constructed. The trial court found that Surveyor made a mistake but that a mistake does not necessarily constitute actionable negligence and rejected Appellant's demand on the ground that Appellant failed to produce expert testimony to establish Surveyor's negligence by showing that Surveyor failed to exercise the degree of skill and care exercised by other surveyors in the vicinity. We reverse and render judgment for Appellant.
Subject property fronts on a service road running along and parallel to the north side of Florida Boulevard in Baton Rouge, which thoroughfare is subject to the jurisdiction of the State Department of Highways. Surveyor's plat, dated July, 1973, shows a 24" reinforced concrete pipe situated in the southwest corner of Lowe's property beginning at the south property line and lying approximately one foot east of Lowe's western boundary. The pipe was in fact one foot inside the east boundary line of Lowe's adjoining owner Howard J. Brinkhaus. The plat also shows three catch basins, each measuring 3' × 4', and a 24" pipe lying within the highway right of way parallel to Lowe's front property line.
Lowe's intended to use the land for a large retail outlet. Prior to purchasing the location, Lowe's had the property inspected by its design and construction Engineer, Ken Canter. With Surveyor's plat in hand, Canter went on the property and observed the drainage facilities existing in the highway right of way, including the 24" drain pipe and some catch basins. He also saw the drain pipe which Surveyor's plat indicated was located on the land which Lowe's proposed to purchase. Fearing that there might be a drainage problem, Canter contacted representatives of the Highway Department and was told emphatically that no additional drainage would be permitted to empty into the Department's existing facilities. After careful study of the situation, Canter concluded that the drain pipe shown on Surveyor's plat was adequate to drain the property Lowe's intended to buy. He then gave his approval of the purchase. Lowe's then purchased the land and began construction in November, 1973. The work included a drainage system consisting of curbs, gutters, catch basins and other facilities designed to channel water from Lowe's premises into the drainage system within the highway right of way via the drainage pipe shown on Surveyor's plat. Lowe's completed its project in early July, 1974, and scheduled the opening of its new store *967 for July 26, 1974. On July 2, 1974, Lowe's first received notice, in the form of a letter from Brinkhaus, that Lowe's had erroneously utilized drainage facilities located on Brinkhaus' land. On July 12, 1974, Lowe's received a letter from Charles Hair, Chief Engineer of the City-Parish Government, informing Lowe's that Brinkhaus' complaint was being investigated. Before Lowe's could open its store, it had to have an occupancy permit from the City-Parish Government. It was made plain to Lowe's that the permit would not be forthcoming until the drainage problem was solved. Lowe's then requested bids from several contractors, including its on-the-job contractor, to perform the work necessary to remedy the error. Lowe's on-the-job contractor submitted a low bid of $8,983.00. On July 19, 1974, Lowe's deposited a cash bond of $8,983.00 with City-Parish authorities as a good faith deposit to insure performance of the remedial work. Lowe's also requested and, on July 22, 1974, was granted a permit by the Department of Highways to install a catch basin within the highway right of way to drain into the Department's system.
The curative work involved removal of the encroachment from Brinkhaus' land. This necessitated a complete revamping of the original drainage plan including removal and relocation of curbing, installation of more than 200' of pipe, construction of catch basins, removal of some asphalt paving, reworking a sewerage treatment plant, seeding, landscaping and miscellaneous clean up. The contractor submitted to Lowe's a bill for $8,215.00 which Lowe's paid and which amount is the sum sought herein.
Relying upon Charles Carter & Company, Inc. v. Edward C. McGee, Jr., 213 So.2d 89 (La.App. 1st Cir. 1968), and Pittman Construction Company, Inc. v. City of New Orleans, 178 So.2d 312 (La.App. 4th Cir. 1965), the trial court held that to recover, plaintiff must prove: (1) defendant owed plaintiff a duty; (2) defendant breached the duty in a negligent manner; and, (3) the breach caused plaintiff's loss. Despite Surveyor's admission of the error, the trial court concluded that a mistake is not necessarily negligence, and Appellant failed to establish negligence by expert testimony, showing that Surveyor did not exercise the degree of care and skill required by the surveying profession in the vicinity.
We disagree with Appellant's contention that the doctrine of res ipsa loquitur is applicable herein. The doctrine urged is a rule of evidence to be applied at the termination of a case when all evidence has been submitted. It may then be invoked only when all the facts fairly and reasonably lead to the conclusion that defendant was negligent in some manner, thus placing on defendant the burden of explanation and exculpation from an inference of negligence. Larkin v. State Farm Automobile Insurance Company, 233 La. 544, 97 So.2d 389 (1957); Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972).
In Pittman Construction Company, Inc., above, the court held that liability of an engineer is determined by the same rules applicable to architects, physicians and other professionals. The court also held that the test of liability is whether the engineer performed with the same degree of skill and care exercised by others in the same profession in the same general area and that proof of failure so to do rests upon plaintiff. Additionally, the court held that the mere undertaking of a project by an engineer implies possession of the skill and expertise to perform the required service at least ordinarily and reasonably well and the application of such skill reasonably and without neglect.
Charles Carter & Company, Inc., above, concerned a surveyor who allegedly miscalculated the location of certain building pilings. The surveyor was exonerated from fault. We reaffirm our holding in Charles Carter & Company, Inc. that surveyors are expected to perform with the same degree of care and skill exercised by others in the profession in the same general area. Ordinarily, proof of lack of such skill and care or proof of failure to exercise such *968 skill and care in a given instance rests upon plaintiff. We deem it reasonable, however, to except from the general rule those instances when the conduct of a surveyor may be so unprofessional, so clearly improper, and so manifestly below reasonable standards dictated by ordinary intelligence, as to constitute a prima facie case of either a lack of the degree of skill and care exercised by others in the same general vicinity or failure to reasonably exercise such skill and care. We find the omission of a visible drainage structure from a surveyor's plat to fall within the exception. No profession may, by adopting its own standards of performance, method of operation, or paragons of care, insulate itself from liability for conduct which ordinary reason and logic characterize as faulty or negligent. See Favalora v. Aetna Casualty and Surety Company, 144 So.2d 544 (La.App. 1st Cir. 1962). Having failed to refute the prima facie showing made by Appellant, Surveyor must respond in damages.
Surveyor contends Appellant suffered no damage or loss because Appellant was allowed to drain its lands into the Department of Highway's facilities in the highway right of way. We answer this argument by noting that Appellant relied on Surveyor's representations and planned its drainage to utilize facilities presumably located on Appellant's own premises, but which were in fact on adjoining lands. The funds expended, predicated on Surveyor's error, were wasted because the original works had to be removed, replanned, relocated and reconstructed at additional cost to Appellant. But for Surveyor's mistake, Appellant would not have incurred the additional cost.
We likewise find no merit in Surveyor's contention that Surveyor was not accorded opportunity to correct the mistake, and that the remedial work could have been performed at less expense. In this instance, time was of the essence. Appellant had scheduled its opening date within a few days of discovery of the error. Delay in opening would undoubtedly have been costly to Appellant. We note that Appellant sought to protect itself and Surveyor from excessive cost by advertising for bids for the curative work required. The ultimate cost proved less than the lowest bid received.
The doctrine of avoidable consequences requires an injured party to take reasonable steps and exercise ordinary prudence to minimize his damages. Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823 (1968). Full consequences of an injury are recoverable where the injured party exercises that degree of care and diligence in minimizing damages as would be taken by an ordinarily prudent individual under the same or similar circumstances. Reasonable care depends upon the circumstances attending each particular case, including time, knowledge, opportunity, exposure to further loss and the expense required to avoid reasonably foreseeable loss. Unverzagt, above.
We find that Appellant acted with reasonable prudence, caution, dispatch and diligence under the circumstances. Its imminent opening date made immediate action absolutely imperative. Appellant took every reasonable precaution available under the circumstances to minimize loss to itself as well as the cost of the curative work. Surveyor may not complain because Appellant reasonably mitigated damages for which Surveyor is liable.
It is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby reversed and set aside and judgment rendered herein in favor of plaintiff Lawyers Title Insurance Company and against defendants Carey Hodges & Associates, Inc., and Paul J. Morel, in solido in the sum of $8,215.00, with legal interest thereon from date of judicial demand, until paid, and all costs of these proceedings.
Reversed and rendered.