376 So.2d 525 (1979)
Patricia C. RUE and Lloyd Rue, Jr., Plaintiffs-Appellants,
v.
STATE of Louisiana, DEPARTMENT OF HIGHWAYS, Defendant-Appellee.
No. 6731.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1979.
*526 Plauche, Smith, Hebert & Nieset, Allen L. Smith, Jr., Lake Charles, for plaintiffs-appellants.
Owen M. Goudelocke, of Mengis, Durant & Carpenter, Baton Rouge, for defendant-appellee.
Before GUIDRY, FORET and SWIFT, JJ.

ON REMAND FROM THE LOUISIANA SUPREME COURT
FORET, Judge.
This matter comes before us on remand by the Louisiana Supreme Court in Patricia C. Rue and Lloyd Rue, Jr. v. State of Louisiana, Department of Highways, 372 So.2d 1197 (La.1979).
This Court had originally, by an unpublished opinion, affirmed the judgment of the trial court dismissing plaintiffs' suit. The Supreme Court reversed the finding of this Court, and that of the trial court, and remanded the matter to us for award of damages to the plaintiffs.
Inasmuch as our original opinion was an unpublished one, attention is called to Footnote # 2 of the Louisiana Supreme Court decision, which sets out the findings of fact as to how and where the automobile accident in question occurred. We will not go into a further discussion of those facts.

GENERAL DAMAGES TO PLAINTIFF, PATRICIA C. RUE
Plaintiff, Patricia Rue, is a 32-year-old married female. The personal injuries which she received in the accident were substantial.
The testimony of her treating physician, Dr. Cobb, an orthopedic surgeon, and Dr. Leoni, a neuro-surgeon, both practicing in Lafayette, reveals that Mrs. Rue was brought into the emergency room at Lafayette General Hospital in critical condition. She had sustained a complete transverse fracture of the C-2 cervical vertebra presenting an immediate and acute danger of total paralysis or death. She was suffering from a concussion, shock, and a compound comminuted fracture of the left wrist with bones protruding through the skin of the wrist. She also had multiple lacerations, bruises, and contusions.
Mrs. Rue was immediately taken to surgery for traction for stabilization of the neck fracture. She remained in critical condition for several days and then stabilized sufficiently for surgery to the left wrist.
Mrs. Rue was in the Lafayette General Hospital initially for a period of nineteen days. During this time a special halo brace was ordered by Dr. Leoni and applied to Mrs. Rue. The halo brace is a device wherein the head is held in a rigid position with reference to the neck, by screws which are surgically inserted into the skull from a steel frame above the head, supported by a collar around the neck and chest. Mrs. Rue wore this type brace for a period of three months during which time she was totally disabled. She had complaints of neck, shoulder, and head pains consistently during this three-month period of agonizing neck tension and was heavily sedated the first nineteen days of its application. Subsequent to the removal of the halo brace, Mrs. Rue wore a soft neck collar which she wore for an additional two-month period.
Dr. Leoni testified that his principal concern at time of trial was with reference to the neck injury, and concerned the possible ultimate development of traumatic arthritis which could cause impingement on Mrs. Rue's spinal cord with resulting loss of sensation or perhaps even paralysis. He testified, however, that he had no way of knowing whether this would occur, but stated that the neck area is one of considerable movement and one well known as a target for arthritic changes following trauma.
With reference to the injuries to the left wrist of Mrs. Rue, Dr. Cobb, an orthopedic surgeon, performed the initial surgery on the compound fracture of Mrs. Rue's left *527 wrist, and she wore a cast for a period of over six months. She suffered a great deal with wrist pain, and when the cast was removed, her left wrist exhibited significant weakness and loss of motion. Dr. Cobb then performed additional surgery in January, 1977, to improve wrist function. The surgery reduced her loss of function, but not her weakness. Dr. Cobb testified that he would expect her wrist to be very weak for the remainder of her life. He also prognosticated pain on overuse and felt that there might be any number of normal activities in which Mrs. Rue would not be able to engage in the future due to the disability in the wrist. Dr. Cobb testified that Mrs. Rue had sustained a permanent disability of 25% of the left arm due to the loss of motion and weakness. She still has angulation of the wrist and severe scarring in the area of the initial skin puncture and the resulting double surgeries.
Counsel for plaintiffs submits in his brief that Mrs. Rue is entitled to an award of $75,000.00 for general damages as a result of her injuries. In our opinion, judgment should be rendered in favor of Mrs. Rue for $60,000.00 in general damages, i. e., for pain and suffering, past, present and future; disabilities, past, present and future; disfiguration, etc.

SPECIAL DAMAGES
Plaintiff, Lloyd Rue, claims damages for $1,700.00 to his motor vehicle. He testified that he had bought the vehicle at a cost of $6,200.00 in 1973. After the accident in 1976, he sold the vehicle for salvage for the amount of $4,500.00. He introduced no evidence whatsoever as to the value of the truck in 1976 before the accident. It seems to us that it would have been easy enough to obtain an expert witness to testify as to the value of the truck before the accident. In our opinion he has simply failed to carry his burden of proof as to the damages that he sustained in reference to the vehicle.

LOSS OF EARNINGS OF MRS. RUE
Mrs. Rue was employed as the manager of an apartment complex in Lafayette at the time of the accident, earning $600.00 per month. Mrs. Rue's husband, Lloyd, and Theda Dugas, a close friend, both testified that Mrs. Rue was so employed. We consider this testimony to be sufficient corroboration. She was off of work from May 9, 1976, to April 15, 1977, approximately eleven months, and therefore sustained a loss of earnings of $6,600.00.

MEDICAL AND OTHER EXPENSES
Defendant admits that $22.00 for the cost of Mrs. Theda Dugas' deposition should be allowed. No other depositions were utilized at trial, and their costs should not therefore be taxed. We agree.
Defendant admits the following medical expenses claimed by the plaintiffs:

 Dr. Cobb ______________________________ $ 1,320.00
 Hamilton Medical Group ________________ 131.00
 Lafayette General Hospital ____________ 4,730.05
 Homemakers Upjohn Nursing Care _____ 1,794.25
 TOTAL ___________________ $ 7,975.30

On the other hand, Mrs. Rue testified that she paid to Homemakers Upjohn $2,841.38, although she only has a bill for $1,794.25. Additionally, she testified that she paid $40.00 to a Dr. Sonnier, and $600.00 to Dr. Leoni for which she did not have bills to introduce into evidence. The State admits that the bill of Dr. Leoni in the amount of $600.00 was stipulated to upon proper introduction (tr., pg. 270), but contends that no such introduction was ever made, and that therefore the bill should be disallowed.
At trial, Dr. Leoni was uncertain about the amount of his bill, and it was decided between counsel and the court that he would telephone the judge's office and inform him of the amount of his bill. Counsel for plaintiffs, at oral argument before this Court (counsel for the State was not present) stated that Dr. Leoni's office called the judge's secretary to confirm Dr. Leoni's bill, however, through inadvertence, the amount was not entered into the record. No doubt Dr. Leoni performed substantial services for Mrs. Rue, and we feel that the plaintiffs have met their burden of proof in this connection.
*528 With reference to the amount expended to Homemakers Upjohn Nursing Care by the plaintiffs, we find that plaintiffs have only proved an expense of $1,794.25, and we find that the plaintiff has failed to prove that she paid $40.00 to a Dr. Sonnier.
Essentially, for a party to prove the amount of damages or expenses to which he is entitled, without the testimony of those who actually performed the services for which the party incurs the expenses, involves a four-point procedure:
(1) testimony that he has paid the amounts;
(2) corroborated by introduction into evidence of the bills paid;
(3) identification of the bills as items incurred;
(4) by opponent's default.
Trinity Universal Insurance Co. v. Normand, 220 So.2d 583 (La.App. 3 Cir. 1969), rehearing denied April 8, 1969. It seems to us that it would have been simple enough for plaintiffs to have obtained and introduced a statement from Homemakers showing the entire amount of $2,841.38; or that plaintiffs could have introduced a receipt therefor, or a cancelled check. This they have failed to do, and plaintiff's testimony stands alone on this issue.
At oral argument, counsel for the plaintiffs pointed out to this Court that the counsel for the State who had filed the brief on the remand of the case to this Court was not the same counsel who had tried the matter on behalf of the State in the trial court. Counsel for plaintiffs then informed us that at trial it was stipulated that medical bills, etc. could be introduced and filed on the testimony of the plaintiff identifying same. As pointed out above, however, in the case of Homemakers Nursing and of Dr. Sonnier, while the testimony was given by Mrs. Rue, there are no corroborating statements or any other corroborative evidence, and accordingly the claim for these items of expense will be denied.
Accordingly, it is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Patricia C. Rue, in the amount of $60,000.00 for general damages, and for the amount of $6,600.00 for loss of earnings, with legal interest on both amounts from date of judicial demand;
It is further ordered, adjudged and decreed that there be judgment herein in favor of Lloyd Rue, Jr. in the amount of $22.00 for the cost of the deposition of Theda Dugas, and for $8,575.30 for medical expenses incurred, plus legal interest thereon from date of judicial demand;
It is further ordered, adjudged and decreed that costs of these proceedings, in both the trial court and in this Court are assessed against the State of Louisiana, through the Department of Highways, now the Department of Transportation and Development.
RENDERED.