CHIASSON, Judge.
Clegg Concrete, Inc., defendant-appellant, appeals a judgment awarding damages in the amount of $10,802.60 to Herlitz Construction Company, Inc., plaintiff-appellee, for corrective work necessitated by deficient concrete supplied by Clegg.
The facts of this case are thoroughly set forth in our previous opinion. See Herlitz Construction Company, Inc. v. Clegg Concrete, Incorporated, 378 So.2d 1002 (La.App. 1st Cir. 1979). In the earlier case, we found that remedial repairs were necessary due to the fault of the subcontractor; we reduced the trial court’s award of damages to $9,399.83 and we remanded this case to the trial court for the receiving of more evidence on items of damage other than labor and additional concrete.
On remand, the trial court awarded Her-litz Construction Company, Inc., several itemized items of expenses allegedly incurred as a result of the corrective work performed.
Clegg alleges the trial court erred: (1) in awarding the amounts of $1,720.30 and $2,581.68 which represent work performed by Nichols Construction Company and We-bre Steel Company; (2) in awarding $4,083.12 which represents work performed by General Sand & Gravel as an item of damage; and (3) in allowing an associate of A.A. Sollay Corp. to testify as to the business records of that firm.
As to the first assignment of error, Clegg contends that Herlitz failed to mitigate its damages or minimize the cost of the curative work by not cancelling its order for the mats necessary for the heavy equipment to be used in the next phase of construction, once it was discovered that the seven (7) day test results showed a radical deficiency in the strength of the concrete and, therefore, Herlitz is not entitled to collect the monies allegedly due for the work performed by Nichols and Webre. Herlitz argues that its actions in awaiting the test results of two testing laboratories before cancelling its order were reasonable under the circumstances of this particular case and contract. The record shows that it is not unusual for concrete to fail the seven (7) day test and still be of sufficient compressive strength at the twenty-eight (28) day break. Additionally, it was important to all of the parties that the construction project proceed on schedule. This being the case, the delivery of the mats used to support the heavy equipment needed for the next stage of the project proceeded as scheduled up until it was finally determined that the concrete did not meet the requisite compressive strength.
The trial court concluded that, based upon the circumstances of this particular case and contract, Herlitz was not unreasonable in not stopping its order to deliver the mats when it first learned that a problem with the concrete might exist. From a review of the record before us, such a factual determination by the trial judge is supported by reasonably credible evidence and is not manifestly erroneous or clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Therefore, we affirm the trial judge’s awards of $1,720.30 and $2,581.68, which represent the work of delivering and removing mats to the construction site which was performed by Nichols *389 Construction Company and Webre Steel Company, respectively.
As to the second assignment of error, Clegg contends, according to Louisiana Civil Code Article 1934, it, as the good-faith debtor, is liable only for such damages as were contemplated, or as may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. Clegg contends that Herlitz is not entitled to recover the amount paid since the fill sand was not a contemplated item of damage.
Herlitz urges that, according to Civil Code Article 1934, contemplated damages are those which may “.. . fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of its breach.” Stewart Carnal Co. v. Postal Telegraph Cable Co., 4 Orl.App. 194 (1907). Under this reasoning, Herlitz concludes the need for the fill sand to bring the slab up to grade arose naturally from the contract breach.
The record shows that due to the defective concrete, the pouring of the floor slab was delayed while the rest of the project moved along as scheduled. Since the structural steel work had proceeded, the sun was not able to get to the soil to dry it out after the bad weather had set in. A “quagmire of mud” resulted and it became necessary to excavate and replace the mud with fill sand.
The trial court stated in its reasons for judgment that “... In considering what damages might be contemplated, it is necessary to determine the nature of the contract. In construction activities, it is common knowledge that time is of great importance in completing construction work. This court finds that those in the construction field know that the elements must be considered.” We affirm the trial judge’s award of $4,038.12 since we are convinced that the fill sand needed to bring the slab up to grade was an item of damage which was contemplated by the parties at the time of the contract and arose naturally from the contract breach.
Finally, Clegg urges that the trial court erred in allowing Mr. Gary McConnell, an associate of A.A. Sollay Corp., to testify as to the accuracy of the business records of A.A. Sollay and therefore, improperly awarded Herlitz the sum of $550.00.
Clegg contends that Mr. McConnell is not the proper person to testify as to such accuracy since he is not an officer or the treasurer or the custodian of the records. On the other hand, Herlitz argues that regardless of the status of Mr. McConnell with A.A. Sollay, the $550.00 charge was a proper item of damage correctly awarded by the trial court according to the tests delineated in the cases of Trinity Universal Insurance Company v. Normand, 220 So.2d 583 (La.App. 3rd Cir. 1969) and Rue v. State Department of Highways, 376 So.2d 525 (La.App. 3rd Cir. 1979).
In the case of Rue, the Third Circuit aptly stated the following applicable principles:
“Essentially, for a party to prove the amount of damages or expenses to which he is entitled, without the testimony of those who actually performed the services for which the party incurs the expenses, involves, a four-point procedure:
(1) testimony that he has paid the amounts;
(2) corroborated by introduction into evidence of the bills paid;
(3) identification of the bills as items incurred;
(4) by opponent’s default.”
The testimony of Mr. John Bennett reveals that he personally paid the invoice of A.A. Sollay Corp. in his capacity as treasurer of Herlitz. Furthermore, it was established that the amount represented by that invoice was incurred solely as a result of the defective concrete delivered by Clegg and the invoice was entered into evidence without objection. Therefore, the trial court correctly allowed Herlitz the sum of $550.00.
*390 Herlitz answered the appeal and alleges that the trial court erred: in not allowing their $640.50 claim; in not allowing them $1,708.18 for A.M. Franco Company’s redesign work paid by them to Milton H. Wom-ack, Inc., the General Contractor; and, in sustaining opposing counsel’s objection to the introduction of a bill received from A.M. Franco Company for such redesign work.
Herlitz contends that the trial court erred in not awarding it $640.50 which represents the fair rental value for trucks and a pager owned by Herlitz and used during the time that it was doing corrective work necessitated by the bad concrete. The trial court, in denying recovery of such amount, did not find that sufficient evidence was presented by Herlitz to show that such charges constituted a fair and reasonable rental charge.
We find that the trial court properly disallowed Herlitz’s $640.50 claim based on the statement which was introduced into the record. “There is no proof that these notations constitute records kept in the regular course of Herlitz’s business. On the contrary, these materials appear to have been prepared for purposes of trial and lack sufficient reliability to justify admission.” Herlitz Construction Company, supra.
Mr. Bretz, Chief Executive Officer of Contracting for Milton J. Womack, Inc., testified that certain redesign work was necessary as a result of the defective concrete. Herlitz urges that the trial court erred in sustaining opposing counsel’s objection to the introduction of a bill received from A.M. Franco, Co., for such redesign work, on the ground that it is a third-party charge constituting hearsay evidence.
The accuracy of the invoices was not verified at trial. Although some third-party charges have been held admissible in other trials, the reliability of these other records was supported by the testimony of third parties. Therefore, as in our first hearing of this matter, we find that the element of reliability is lacking in this case and therefore, we find the trial court properly sustained opposing counsel’s objection to the introduction of the invoices of A.M. Franco, Co., Herlitz Construction Co., supra, and the cases cited therein.
For the foregoing reasons, the judgment of the trial court is affirmed at the appellant’s costs.
AFFIRMED.