LOTTINGER, Judge.
This is a wrongful death and survival action brought by the dative tutrix of the minor Kuumba Nakazia Scott against the State of Louisiana, through the Department of Transportation and Development, for the death of Kuumba’s mother, Ms. Charlene Scott. From a judgment in favor of plaintiff, defendant has appealed.
The trial judge assigned excellent written reasons for judgment which we adopt as our own:
“This case deals with a one car accident in which Charlene A. Scott, mother of the infant Kuumba Nakazia Scott, was killed when her automobile left Hwy. 308 in *285 Lafourche Parish just north of the City of Thibodaux and went out of control landing upside down in a large, deep drainage canal where it entered Bayou Lafourche. The vehicle landed in an inverted position with only the wheels protruding from the water and Charlene A. Scott died from drowning. The physical conditions which existed at the time of the accident on April 18,1978, are uncon-tradicted. Hwy. 308 at the point of the accident was a two way, blacktop road with two lanes of ten feet each. The road curved slightly to the left for southbound traffic, but the curve was so gradual as to be almost imperceptible and what little shoulder there was was from four to six inches lower than the road surface at the point where the vehicle first left the road. All evidence, including the testimony of an eye witness, indicated that Ms. Scott was traveling at approximately the legal speed of the area, 55 M.P.H., driving a Dodge Omni, that the right side of the ear dropped off onto the shoulder, apparently bounced back onto the roadway almost immediately (after traveling an estimated distance of fifteen feet, which would have taken approximately one second at 55 M.P.H.) and then again left the highway in a diagonal direction cresting a slight rise on the edge of the drainage canal, traveling through the air to the opposite bank where it struck and then rolled into the water where Ms. Scott drowned. The evidence does not show as stated on page 6 of defendant’s post trial memo that ‘Ms. Scott knew of the allegedly hazardous shoulder, and attempted to correct the path of her vehicle, and that therefore, this accident actually happened due to the fact that Ms. Scott oversteered her vehicle, causing her to lose control.’ On the contrary, all of the evidence and testimony clearly indicates that when' this small, frontwheel drive car inadvertently left the roadway that she lost control as her car struck the deep rut on the side of the highway and that her actions contributed nothing to her demise. This Court considers that the case of Rue v. State of Louisiana, 372 So.2d 1197 [(La.)], and 376 So.2d 525 [(La.App.)], is controlling and that as the Supreme Court therein stated:
‘a motorist who inadvertently drove off a highway and onto its shoulder and who lost control of her vehicle upon striking an admittedly dangerous rut in the shoulder was not barred from recovery for her injuries by her negligence in leaving the paved surfaces.’
There was absolutely no evidence presented which could lead the Court to conclude that Ms. Scott in any way contributed to the accident which resulted in her demise other than inadvertently leaving a narrow roadway which of itself has been determined by the Supreme Court not to be such negligence as would bar recovery.
“We turn now to the damages to which the plaintiff is entitled. Kuumba Naka-zia Scott was born to Charlene A. Scott on November 17, 1978, five months prior to the death of his mother. While he may have been illegitimate, the evidence presented at the trial through the testimony of Dorothy Scott, the mother of Charlene Scott, indicates that there was a very close loving relationship between the infant and his mother and that she cared and supported him from his birth until the time of her death.
“The only testimony concerning the value of the loss of support for the infant was the testimony of Dr. Seymore Goodman, who was stipulated by counsel as an expert in the field of economics. His estimate is based on a study made by the Department of Agriculture which he considered the most official study for use in this kind of analysis. He selected as his category from this study a low cost budget in rural south in a low income family of one child with one parent. Based on the projection of the cost of the separate elements that go into the support of the child, i.e. food, clothing, housing, etc., and on an average rise in the cost of living over the previous eighteen years, he estimated a past loss of $5,033.33 and a fu *286 ture loss discounted at 7% of $39,197.10, for a total of $44,230.43. In his expertise, however, he felt that using the last eighteen years was unrealistic and that using just the last five years would be a more accurate way of arriving at a figure for this loss of support. On this basis, which the Court also believes is more realistic and accurate, he derived a total loss of support at $67,931.73 after applying the discount. Additionally, he estimated the value of child care services, of which the infant was deprived by the death of his mother, to be $3,233.79 to the time of trial and the discounted value of the future loss of household services at $21,-007.52, for a total of $24,241.31. This figure for the value of child care services coupled with the figure for the loss of support of $67,931.73 makes a total loss of $92,173.04. Inasmuch as the Court agrees that the five year average was more realistic than the eighteen average because of the tremendous change in economic conditions over the past decade and the mathematics of this stipulated expert are the only figures which were presented to the Court, any other lesser or greater award on the part of the Court would be pure speculation and this the Court is not permitted to do.
“Turning now to the loss of love and affection, grief and mental anguish suffered by the child, the amount to which he is entitled is more difficult to determine. Dr. Marsha Redden, a clinical psychologist, also stipulated as an expert by counsel, whose testimony was uncontra-dicted by any expert on behalf of defendant, testified that children need two parents and that when they have only one, the loss of that single parent is a greater loss which causes depression and anxiety in the child and increases rather than decreases as the child gets older. Since the child was only five months at the time of the single parent’s death, he will be deprived of that parental love for almost the entire period of his minority, and a figure of $100,000.00 for such a loss would seem to be reasonable and within the discretion of the Court.
“Insofar as the amount sought for the pain and suffering of the deceased, the Court must conclude from the evidence, again uncontradicted and unrefuted, that the deceased Charlene Scott was not rendered unconscious by the accident and though bruised and cut from it, she was conscious when her vehicle overturned in the water in which she died. Dr. John Heindingsfelder, an assistant coronor accepted as an expert in the field of pathology, testified that since there was no evidence to indicate that she had been knocked unconscious, she probably experienced up to two minutes of consciousness and then two to three minutes of inhaling water and then death. The two minutes of conscious awareness of the imminence of her death by drowning and the bruises and lacerations sustained would in this Court’s opinion support an award of $15,-000.00 for pain and suffering.
“And finally the plaintiff seeks to recover for the expenses caused by the death. Plaintiff and defendant entered into a joint stipulation that the amount of special damages caused by the death, i.e. the funeral expenses, ambulance charge and hospital charge, amounted to $3,242.25 and plaintiff, Dorothy Scott, is entitled to recover this sum. There will, therefore, be judgment in favor of the plaintiffs in the total amount of $210,415.29.”
SPECIFICATIONS OF ERROR
Defendant-appellant contends the trial court erred (1) in its conclusion that the highway condition constituted a defect to drivers exercising ordinary care and reasonable prudence, (2) in failing to find Ms. Charlene Scott guilty of contributory negligence, (3) in awarding damages for wrongful death under La.Civ.Code art. 2317 since that article makes no provision for recovery in the event of wrongful death, and (4) in awarding an excessive amount of damages.
I
After a thorough and exhaustive review of the record we find no merit in specifications of error 1, 2 and 4. The case *287 sub judice is factually distinguishable from Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). For a case very similar see LeBlanc v. State of Louisiana and the Department of Highways, 419 So.2d 853 (La.1982).
II
In specification of error number 3 appellant argues that if the trial court based its decision on La.Civ.Code art. 2317, and if this court finds Article 2317 applicable here, then plaintiff cannot recover for wrongful death because no wrongful death action is found in Article 2317.
Appellant’s argument is novel, but not persuasive.
We are of the opinion that the trial judge did not use La.Civ.Code art. 2317 in reaching his decision, and neither does this court in affirming. But even conceding for the sake of argument that Article 2317 had been used, all Article 2317 really does is eliminate the proof of knowledge on the part of the defendant that a vice existed in the thing that the-defendant owned or had garde over. Kent v. Gulf States Utilities Company, 418 So.2d 493 (1982). Article 2317 is merely a classification of fault under Article 2315, the same as Article 2316-negli-gence. Since wrongful death actions are authorized by Article 2315, then it follows that they must also be authorized in an Article 2317 situation.
Therefore, for the above and foregoing reasons the judgment of the trial court is affirmed at defendant-appellant’s costs. The costs are in the amount of $2,403.15 dollars.
AFFIRMED.