442 So.2d 579 (1983)
Mr. & Mrs. Carl STANLEY
v.
John GUY, d/b/a John's Truck Rental, et al.
No. 83 CA 0127.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
*580 Guy A. Modica, Baton Rouge, for plaintiff-appellee Mr. and Mrs. Carl Stanley.
Kenneth L. Riche, Baton Rouge, for defendant-appellant John Guy d/b/a John's Truck Rental, et al.
Before PONDER, WATKINS and CARTER, JJ.
CARTER, Judge.
This is a suit for damages suffered as the result of a breach of contract.
Plaintiffs, Mr. and Mrs. Carl Stanley, filed suit against John Guy, d/b/a John's Truck Rental and General Contractors Company, alleging that Guy's failure to complete work on a concrete deck surrounding their pool resulted in the collapse of the pool. Defendant Guy reconvened for the balance due him on the contract price.
The trial court rendered judgment in favor of the plaintiffs in the amount of $5,250.38 on the main demand. Defendant Guy's reconventional demand was dismissed. Thereafter, defendant perfected this appeal.
The Stanleys purchased a pool kit[1] during the summer of 1980. By July 4, 1980, they had completed the installation of the pool. The main components of the pool kit were fiberglass panels (thirty-nine inches high by six feet long) and a vinyl liner. The panels forming the wall at the shallow end of the pool rest on the floor of the pool, whereas the panels located at the deep end of the pool rest on a dirt ledge. The panels, which are bolted together for installation, have an "inverted A-frame" brace perpendicular to the top of panel. A concrete deck is poured around the pool on top of the braces. The anchoring of the braces in the concrete prevents the pool walls from caving inward. A mixture of sand and cement is smoothed over the bottom of the pool and the exposed dirt sides, and the vinyl lining is laid in the interior. The structure of the pool is maintained because there is equal pressure on both sides, i.e., the deck and to some extent the water inside the pool holds the walls in place against the pressure of the surrounding dirt.
The Stanleys used the pool for several weeks but were dissatisfied with the rough texture of the concrete deck surrounding the pool. Mrs. Stanley then contacted Mr. Guy and arranged for him to reconstruct the entire concrete deck.
The parties signed a contract dated September 28, 1980. According to the contract, Guy was to break up and remove the existing concrete deck around the pool and then repour the deck (and a patio and walkway) using an exposed aggregate finish. Although the contract called for the work to be completed "as soon as possible weather permitting," no specific completion date was set out in the contract. Guy told the Stanleys that the work should take approximately two weeks to complete.
The full contract price was $1,150.00 and the payments were to be made as follows: $500.00 at the time the contract was signed; $200.00 at the time the existing deck was broken up; and, $450.00 at the time the work was completed.
Guy began work on the project September 29, 1980 and received the initial payment of $500.00 on September 30, 1980. On October 3, 1980, he received the second payment of $200.00, when, according to Guy, he completed breaking up the existing concrete deck. Mrs. Stanley testified that the existing concrete deck was not completely broken up until October 14, 1980. Both parties agreed that the rubble was not cleared away and the area was not *581 formed up for repouring until the end of October.
According to the record, the water level in the pool was lowered slightly sometime during October. The Stanleys testified that this was done at Mr. Guy's direction. Mr. Guy denies having given any instructions concerning the water level in the pool.
Mr. Guy ordered concrete for the new deck to be delivered to the Stanley home on November 3, 1980. However, by this time, Mrs. Stanley noticed that one of the pool panels had slipped off the ledge resulting in an inward bulge in the pool. Mrs. Stanley then contacted Mr. Guy and had him postpone the November 3rd pouring date for the concrete. The Stanleys then spent four to five days making repairs on the pool and admitted to lowering the water level during this repair work.
The parties stipulated at trial that Delta Concrete Company was to pour concrete at the Stanley home on November 13th. It was also stipulated that the concrete delivery was canceled. Guy testified that he canceled the concrete delivery at the request of the Stanleys, while the Stanleys denied any knowledge of the November 13th pouring date. The pool collapsed on November 23, 1980, without ever having had a new deck poured.
The Stanleys then filed suit for the damage sustained. The trial judge found that Guy had not completed the work within a reasonable period of time and that Guy's dereliction in completing the project was the principal reason the pool collapsed. The Stanleys were awarded $5,250.38, the cost of installing a new pool.
Defendant appeals assigning the following errors:
(1) The trial judge erred in holding John Guy liable for the collapse of the Stanleys' pool;
(2) The Stanleys failed to mitigate their damages and are thus not entitled to recover for their loss; and,
(3) The trial judge erred in holding John Guy liable for damages which were not within the contemplation of the parties at the time of the making of the contract.

ASSIGNMENT OF ERROR NO. 1
Defendant Guy argues that the trial judge erred in holding him liable for the collapse of the pool.
The trial judge found that after Guy had received a major portion of the contract price due him, his enthusiasm for the project waned. As a result of Guy's failure to complete the project and pour the concrete deck within a reasonable period of time, the pool collapsed.
Guy began working on the project on September 29, 1980. It was not until the end of October that he had completed breaking up and clearing away the existing deck. Although the Stanleys were responsible for the cancellation of the concrete delivery scheduled for November 3, 1980, their actions only resulted in a four to five day delay. Guy could have had the concrete poured at any time after November 7, 1980, which he did not do.
Cory Crane and Gordon Cutler, experts in pool construction, testified that the concrete deck surrounding the pool serves as an anchoring device for the pool and is an essential component in maintaining the pool's integrity. Maintaining a high water level or bracing within the pool are both useful but temporary measures. In order to insure that the pool does not collapse, the concrete deck has to be poured as quickly as possible.
The trial judge stated, in written reasons for judgment, that the pool collapsed as a result of Guy's failure to timely complete the project. The finding of the trial judge was based on the evidence concerning the length of time Guy took to complete the job and on the testimony of experts concerning the possible cause of the collapse of the pool. From a review of the record before us, the findings of the trial judge are supported by credible evidence and are not manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

*582 ASSIGNMENT OF ERROR NO. 2
Defendant argues that the Stanleys failed to mitigate their damages and, therefore, are not entitled to recover for their loss.
An injured party is required to take reasonable steps and exercise ordinary prudence to minimize his damages. The injured party should exercise a degree of care such as would be taken by an ordinarily prudent individual under the same or similar circumstances. Reasonable care depends upon the circumstances attending each particular case, including time, knowledge, opportunity, exposure to further loss and the expense required to avoid reasonably foreseeable loss. Lawyers Title Ins. v. Carey Hodges & Assoc., 358 So.2d 964 (La.App. 1st Cir.1978).
The Stanleys testified that during the month of October they constantly urged Guy to finish work on the new deck. When two of the pool panels slipped off the ledge at the beginning of November, the Stanleys did all of the repair work themselves. Following this, they again made constant attempts to contact Guy and have him pour the new concrete deck and thereby finish the project.
The actions taken by the Stanleys were more than reasonable under the circumstances. We find no merit in defendant's contention that the Stanleys' recovery is barred due to failure to mitigate damages.

ASSIGNMENT OF ERROR NO. 3
Lastly, defendant argues that the trial judge erred in holding Guy liable for damages which were not within the contemplation of the parties at the time the contract was made.
According to LSA-C.C. art. 1934, when one is not guilty of fraud or bad faith, he is liable only for contemplated damages. Contemplated damages have been defined as those which may "fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of its breach." Herlitz Const. Co., Inc. v. Clegg Concrete, 415 So.2d 387 (La.App. 1st Cir.1982).
Both Mr. and Mrs. Stanley testified that prior to signing the contract they questioned Guy concerning his experience working with pools. They also discussed the construction of their particular pool with Mr. Guy and showed him the booklet they used when installing the pool. In addition, they testified that he was made aware of the fact that the deck area around the pool was essential to the continued stability of the pool.
Guy denied having seen the instruction book or having discussed the stabilizing function of the deck with the Stanleys.
After observing all of the witnesses, the trial judge apparently found the testimony of the Stanleys to be more credible. Under our scope of appellate review, where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact shall not be disturbed on appeal absent manifest error. Arceneaux v. Domingue, supra. We find no manifest error.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs on appeal are to be paid by defendant-appellant.
AFFIRMED.
NOTES
[1] A pool kit consists of all the parts necessary to install an "inground" pool. The purchaser is responsible for the labor, either by doing it himself or by contracting it out.