471 So.2d 994 (1985)
Mathew ABRAMS
v.
Van-Phuc T. DINH, State Farm Insurance Company Her Insurer, State Farm Insurance Company and Miller-Terrell Buick, Inc.
No. CA 84 0697.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
*995 Robert C. Williams, Baton Rouge, for plaintiff-appellant Mathew Abrams.
Paul M. Marks, Jr., Baton Rouge, for defendant-appellee State Farm Mut. Auto. Ins. Co. and Van-Phuc T. Dinh.
E. Wade Shows, Baton Rouge, for defendant-appellee Miller-Terrell Buick, Inc.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
This is a suit for damages in tort arising out of an automobile accident cumulated with a suit for damages for breach of contract *996 against an automobile repairer.[1] A trial by jury on these two actions resulted in the following verdicts: (1) in the tort action, the defendant-driver was at fault, this fault was a cause of the accident, the fault of the defendant-driver was 100% and the plaintiff's damages were $2,020;[2] (2) in the breach of contract action, the repairer performed the repairs in an unworkmanlike manner, there was an unreasonable delay in completing the repairs and the plaintiff's damages for these breaches were $2,137. The plaintiff took this devolutive appeal contending he was entitled to $5,574.96 for rentals for loss of use of his vehicle. The repairer answered the appeal contending the trial court committed error by allowing the plaintiff to expand his pleadings during the trial to include a claim for automobile rental for loss of use of his vehicle. In brief, the repairer also contends the trial court committed error by failing to require an itemized jury verdict on damages.

FACTS
On December 10, 1980, Mathew Abrams was driving his 1979 Mercedes Benz automobile in a southerly direction on Airline Highway in the City of Baton Rouge, East Baton Rouge Parish, Louisiana. When he reached the intersection of Airline Highway and Greenmoss Drive, the right front of his vehicle was struck by a 1980 Chevrolet driven by Van-Phuc Dinh, who was traveling on Greenmoss Drive in an easterly direction across the intersection. The Abrams vehicle was towed from the scene of the accident to Miller-Terrell Buick, Inc. (Miller-Terrell) for repairs.
On September 11, 1981, Abrams retrieved his vehicle from Miller-Terrell. On October 12, 1981, Abrams presented his vehicle to Stephens Imports, Inc. (Stephens) of New Orleans for completion of repairs. The repairs were completed on October 21, 1981. Abrams rented a substitute vehicle from Travel Master, Inc. d/b/a Thrifty Rent-a-Car from December 19, 1980, until November 8, 1981, at a rate of $647.13 per thirty day period.

AMENDMENT OF PLEADING TO CONFORM TO THE EVIDENCE

(Miller-Terrell Assignment of Error No. 1)
Miller-Terrell contends the trial court committed error "[b]y allowing the jury in this matter to consider damages against Miller-Terrell Buick, Inc., for `inconvenience and loss of automobile use (rental car)', when the plaintiff did not demand this sum of money from the defendant-appellee herein, Miller-Terrell Buick, Inc."
In his petition, Abrams sought two elements of damage from Miller-Terrell: (1) vehicle loss of value$1,500; and (2) cost of additional repairs$4,898.32. A pretrial conference was held on September 8, 1983. The pretrial order signed by the trial judge contained the following:
III. Other Claims: Plaintiff respectfully request leave of court to submit prior to trial a written amendment to his petition, formally claiming the amount of $6,308.22 (auto rentals) against Miller-Terrell as well as State Farm.
....
IX. Amendments: Plaintiff, orally, and with leave of court will submit a written amendment to his original petition to make his claim for loss of automobile use in the amount of $6,308.22 against defendant, Miller-Terrell Buick.
By letter dated December 16, 1983, counsel for Miller-Terrell advised the trial court judge as follows:
In the pretrial order, the plaintiff indicates that he will orally request that his original petition be amended to assert an additional claim for loss of the use of his automobile. On behalf of Miller-Terrell Buick, Inc., we would object to this oral amendment since such an amendment *997 would be a supplement to his original petition and contrary to Louisiana Code of Civil Procedure 1155.
The trial of this case was held on January 31, 1984. Counsel for Abrams failed to file a written amendment to the petition prior to trial. Counsel for Miller-Terrell again objected to any evidence which expanded the pleadings to incorporate the loss of use (rental) claim. The trial judge overruled this objection and allowed in the evidence.
Initially, we note La.C.C.P. art. 1155 is not controlling because it pertains to "damages ... which have become exigible since the date of filing the original petition". The loss of use claim was exigible prior to the filing of suit. It is well settled under La.C.C.P. art. 1151 that a trial court has much discretion in allowing amendments to the pleadings. Such amendments should be allowed where there is a factual connexity between the original and amended assertions and the opponent is given fair notice of the new relief sought. Mason v. Stauffer Chemical Company, 451 So.2d 32 (La.App. 1st Cir. 1984), writ denied, 452 So.2d 1175 (La. 1984). However, since the authorized amendment was not actually filed, this issue is controlled by La.C.C.P. art. 1154 which provides, in pertinent part, as follows:
If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
The record reflects that by September 8, 1983, almost four months in advance of trial, Miller-Terrell was aware Abrams would seek loss of use damages. Miller-Terrell did not ask for a continuance to respond to this claim and failed to demonstrate the evidence would prejudice its defense on the merits. The trial judge did not abuse his discretion by allowing this evidence in to expand the pleadings. Carter v. Rockwood Insurance Company, 341 So.2d 595 (La.App. 2nd Cir.1977).
This assignment of error is without merit.

AMOUNT OF LOSS OF USE DAMAGES

(Abrams' Assignment of Error No. 1)
Abrams contends the jury abused its discretion in not fully indemnifying him for his car rental expenses.
A repair contract is a lease of labor and/or industry. La.C.C. art. 2745 et seq. Every contract for work or services carries an implied obligation that the contractor will perform in a good workmanlike manner, in default of which he must respond in damages for the losses that may ensue. La.C.C. arts. 1930[3] and 2769; Tiger Well Service, Inc., v. Kimball Production Company, 343 So.2d 1153 (La.App. 3rd Cir. 1977). The jury found Miller-Terrell breached its contract to repair in two ways: (1) the repairs were performed in an unworkmanlike manner and (2) there was an unreasonable delay in making the repairs. Miller-Terrell has not contested either of these findings in this appeal. Abrams is entitled to recover damages. La.C.C. arts. 1930 and 2769.
Abrams claims three elements of damage: (1) vehicle loss of value, (2) cost of additional repairs, and (3) substitute automobile rental. The jury made a lump sum award of $2,137. A lump sum judgment of damages is normally presumed to award all items of damage claimed, and the appellant's burden of proving that the fact finder abused its much discretion is more difficult than usual because the intention to award a specific amount for any particular *998 item is not readily ascertainable. Sorapuru v. Simon, 380 So.2d 1225 (La.App. 4th Cir.1980). Each case must be determined on its own facts and circumstances, and each element of damage claimed must be examined to determine if there was an abuse of discretion. Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1st Cir.1983), writs denied, 433 So.2d 1056, 1057 (La.1983).
The evidence does not support an award of damages for vehicle loss of value. Charles Justice testified the Abrams vehicle depreciated in value by $1,500 because it had been in an accident. There was no evidence presented that the vehicle's loss of value was caused by Miller-Terrell's unworkmanlike repairs or delay in repairing. Therefore, Miller-Terrell cannot be held liable for this element of damage.
The next element of damage claimed was the cost of remedial repairs. The total amount of body repairs by Stephens was $2,336.88. However, Barry Marton, Stephens' body shop manager testified this amount included the cost of stripping and repainting the entire automobile and performing minor body work not related to the work performed by Miller-Terrell. Plaintiff is not entitled to recover the cost of these additional repairs. He can only recover the cost of those repairs which were necessary because of the defective repairs of Miller-Terrell. La.C.C. arts. 1930 and 2769. The defective repairs performed by Miller-Terrell consisted of a misaligned hood due to improper straightening of the frame, an inexact color match of the hood and right front panel and a melted plastic washer fluid bottle. Marton testified Stephens used a Silet bench to straighten the frame of the automobile at a cost of $275 for use of the bench and $110 for labor. He estimated it would cost approximately $170 to repaint the hood and right front panel of the automobile. A new washer fluid bottle cost $12.53. These repairs, which were necessary because of the defective repairs of Miller-Terrell, cost $567.53. Subtracting this amount from the total judgment against Miller-Terrell leaves $1,569.47 for automobile rental, the last element of damage claimed by plaintiff.
Damages for breach of repair contracts may include damages for loss of use. La.C.C. art. 1934;[4]Simon v. Allstate Insurance Company, 422 So.2d 1323 (La. App. 3rd Cir.1982). Normally, damages for loss of use are measured by the rental cost of a substitute vehicle. Alexander v. Qwik Change Car Center, Inc., 352 So.2d 188 (La.1977).
The total amount paid by plaintiff in automobile rental was $5,574.96. However, Miller-Terrell is not liable for this total amount. The tortfeasor who caused the accident is responsible for rentals for a substitute vehicle for a reasonable length of time to secure repairs. Brown v. Morgan, 449 So.2d 606 (La.App. 1st Cir.1984); Carroll v. State Farm Insurance Company, 427 So.2d 24 (La.App. 3rd Cir.1983); Hayes v. Allstate Insurance Company, 368 So.2d 1214 (La.App. 4th Cir.1979). Miller-Terrell is only responsible for rentals during the period of unreasonable delay in making the repairs. Meador v. Toyota of Jefferson, Inc., 322 So.2d 802 (La.App. 4th Cir.1975), aff'd, 332 So.2d 433 (La.1976); Simon, 422 So.2d at 1326.
Marton testified about the reasonable length of time it would take to repair the damages sustained by plaintiff's automobile as follows:
Q Let us say to replace the entire front end, hood, both fenders, the grill and all, and paint it, how long would that take?
A The complete car or just the front end?
Q It is the front, the complete front end.
A Depending on the parts, I would say a month to six weeks.
....

*999 Q Approximately how long would it take for your shop to repair that car as it stands now, assuming there's no structural damages, hidden or otherwise, just as it stands now.
A Assuming that it was approved and okayed this afternoon, I would probably have this car on the road in about twelve working days, based on the damage I see in that picture.
George R. Hoelz, Miller-Terrell's body and paint shop manager, testified, although the automobile was brought to Miller-Terrell on December 11, 1980, plaintiff did not authorize repairs to begin for three or four weeks, and parts had to be ordered to repair the car. In light of these circumstances, we find 60 days would be the reasonable period within which the automobile should have been repaired. Therefore, Miller-Terrell would be responsible for plaintiff's rental expenses commencing on February 9, 1981.
However, Miller-Terrell should not be held liable for rentals for the entire period between February 9, 1981, and November 8, 1981. In Stanley v. Guy, 442 So.2d 579, 582 (La.App. 1st Cir.1983), this court stated:
An injured party is required to take reasonable steps and exercise ordinary prudence to minimize his damages. The injured party should exercise a degree of care such as would be taken by an ordinarily prudent individual under the same or similar circumstances. Reasonable care depends upon the circumstances attending each particular case, including time, knowledge, opportunity, exposure to further loss and the expenses required to avoid reasonably foreseeable loss. Lawyers Title Ins. v. Carey Hodges & Assoc., 358 So.2d 964 (La.App. 1st Cir. 1978).
See also Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823 (1968).
Hoelz further testified Miller-Terrell received payment for the repair work from State Farm Insurance on April 6, 1981, but plaintiff did not take delivery of the automobile because he was dissatisfied with some of the repairs. State Farm then authorized Miller-Terrell to replace the right front apron on the automobile. It is not clear from the record exactly how long this additional repair took. However, Hoelz testified the plaintiff was still dissatisfied with the appearance of his automobile and it stayed on the "ready lot" for "quite a while" before plaintiff picked it up.
Plaintiff picked up his automobile on September 11, 1981, and brought it to Stephens for an estimate. However, he did not authorize Stephens to commence repairs until October 12, 1981. Stephens finished the repairs on October 21, 1981. Plaintiff did not return the rented car until November 8, 1981.
Apparently, the jury found, and we agree, that the plaintiff did not take reasonable steps to minimize his damages. Therefore, the plaintiff must absorb a portion of the rental expenses.
Edward Chance, the President of Travel Master, testified plaintiff's last bill for rental, representing a 30 day period, was for $647.13. The jury awarded plaintiff $1,569.47 in rental expenses ($2,137 total award less $567.53 for remedial repairs). The daily rental for the substitute vehicle was $21.57 ($647.13 divided by 30). Thus, the jury awarded approximately 73 days of rental ($1,569.47 divided by $21.57) for loss of use. This would be rental from February 9, 1981, until April 21, 1984.
The jury did not abuse its much discretion in awarding plaintiff rental expenses against Miller-Terrell for this period under the particular facts and circumstances of this case. Reck v. Stevens, 373 So.2d 498 (La.1979).
This assignment of error is without merit.

FORM OF JURY DAMAGE VERDICT

(Miller-Terrell Assignment of Error No. 2)
Miller-Terrell contends the trial court committed error by submitting a lump sum jury verdict on damages rather than special *1000 interrogatories on each element of damage claimed.
A trial court has much discretion in determining how to obtain verdicts from a jury. La.C.C.P. arts. 1811, 1812 and 1813;[5]Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281 (La.1984); Bishop v. Shelter Insurance Company, 461 So.2d 1170 (La.App. 3rd Cir.1984), writ denied, 465 So.2d 737 (La.1985). Miller-Terrell has failed to show it has been prejudiced by use of a lump sum damage verdict. Although the verdict form utilized by the trial court makes it more difficult for us to exercise our appellate function, we cannot say that it is an abuse of discretion. Verret v. Chotin Transportation, Inc., 356 So.2d 1067 (La.App. 3rd Cir.1978).
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. The cost of this appeal is divided equally between the parties.
AFFIRMED.
NOTES
[1] No dilatory exception pleading the objection of improper cumulation of actions was filed. La.C.C.P. art. 461 et seq.; La.C.C.P. art. 926(7).
[2] This portion of suit was not appealed by either side, and the trial court judgment reflecting these jury verdicts is now final.
[3] La.C.C. art. 1930 has been reenacted and replaced with new La.C.C. arts. 1994 and 2004 by Acts 1984, No. 331, § 1, effective January 1, 1985.
[4] La.C.C. art. 1934 has been reenacted and replaced with new La.C.C. arts. 1998 and 1999 by Acts 1984, No. 331, § 1, effective January 1, 1985.
[5] The subject matter of these articles is now contained in La.C.C.P. arts. 1812, 1813 and 1814, respectively, as reenacted by Acts 1983, No. 534, § 8, effective August 30, 1983.