395 So.2d 419 (1981)
Kenneth L. KNOTTS et ux., Plaintiffs-Appellants,
v.
STATE of Louisiana, DEPARTMENT OF HIGHWAYS, Defendant-Appellee.
No. 8004.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1981.
Rehearing Denied March 23, 1981.
Writs Refused May 6, 1981.
*420 Gold, Little, Simon, Weems & Bruser, John F. Simon, Alexandria, for defendant-appellant.
Thomas & Dunahoe, G. F. Thomas, Jr., Natchitoches, for plaintiffs-appellees.
Provosty, Sadler & DeLaunay, Ronald J. Fiorenza, Alexandria, for defendant-appellee.
William J. Doran, Jr., Baton Rouge, for defendant-appellee-appellant.
Before CULPEPPER, GUIDRY and CUTRER, JJ.
CUTRER, Judge.
This is a suit arising from a one-car accident in which Kirsten Lynn Knotts, eleven year old daughter of Mr. and Mrs. Kenneth L. Knotts, Sr., was killed. Kirsten was a passenger in the vehicle being driven by her brother, Kenneth Knotts, Jr., a minor. The accident occurred on Louisiana Highway 153, which had been undergoing reconstruction by J. W. McDonald as contractor for the State of Louisiana Department of Highways (now Department of Transportation and Development). This highway is in Natchitoches Parish. There was a drop-off of approximately four inches from the road surface to the shoulder. The accident occurred when young Knotts allowed the right wheels of his vehicle to drop off the road surface onto the shoulder and lost control of the car when he attempted to re-enter the highway, causing the accident and death of Kirsten.
Mr. and Mrs. Kenneth Knotts, Sr., brought suit against the State of Louisiana through the Department of Transportation and Development (Department), J. W. McDonald (McDonald), the contractor engaged in the reconstruction of the highway, and Allstate Insurance Company (Allstate), insurer of the vehicle. The Department filed a third party demand against Kenneth L. Knotts, Sr., seeking contribution toward any amount that may be awarded to Mrs. Knotts against the Department. McDonald filed a third party demand against Knotts, Sr., and Knotts, Jr.,[1] along with Allstate, the liability insurer of the automobile, seeking contribution for any judgment that may be rendered against McDonald.
The trial court found that McDonald and the Department were negligent, which negligence caused the accident. The court found Kenneth Knotts, Jr., free of negligence. Judgment was rendered against the Department and McDonald and in favor of Mr. and Mrs. Knotts for general damages in the amount of $75,000.00 each. Mr. Knotts was also awarded $1,000.00 property damage for the loss of the car and $2,435.00 for funeral expenses. The third party demands were dismissed.
*421 The Department and McDonald appeal and plaintiffs appeal insofar as the judgment rejects its demands against Allstate.
The issues presented by the assignments of error are as follow:
(1) Whether the Department should be held liable;
(2) Whether McDonald should be held liable;
(3) Whether Kenneth Knotts, Jr., was negligent and, if so, whether such negligence was a cause in fact of the accident; and
(4) Whether the awards of $75,000.00 to each of the parents, for general damages, was excessive.
The undisputed facts surrounding the occurrence of the accident are as follows:
Kenneth Knotts, Jr., and his eleven year old sister, Kirsten, were returning to their home from school in Natchitoches on the afternoon of May 22, 1978. They were traveling North along Highway 153 which is commonly known as the Creston-Ashland Highway. This highway had been undergoing reconstruction by the Department through McDonald as contractor. This highway is two lane, approximately twenty feet wide and has shoulders approximately three to four feet wide. The roadway was relatively straight and level. The reconstruction began in the Fall of 1977 and, at the time of the accident, the overlay had been completed but the shoulders had not been brought up to the grade of the traveling surface. At the time of the accident, a drop-off of four inches existed on each side of the road surface.
Knotts, Jr., with his eleven year old sister as passenger, allowed the car to drift too far to his right causing the right wheels to drop off the travel portion of the highway onto the shoulder. He subsequently attempted to re-enter the highway and, upon doing so, lost control of the car causing it to overturn, resulting in the death of his sister.

LIABILITY OF THE DEPARTMENT
The general duties of the Department toward the traveling public are set forth in the recent case of Sinitiere v. Lavergne, 391 So.2d 821 (La.1980), where the Supreme Court held as follows:
"It has been repeatedly stated that the Department is not a guarantor of the safety of travelers but, rather, owes a duty to keep the highways and its shoulders reasonably safe for non-negligent motorists. Liability based upon negligence is imposed when the Department is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time.
"Since road shoulders are only designed for temporary use when a motorist finds himself off the roadway, the Department's duty of care is generally discharged at a level of construction and maintenance less than that required for the primary road surface. However, an implicit necessity for the functional use of a shoulder is a connection between the roadway and shoulder that allows for safe gradual movement from one to the other."
With these principles in mind, we will examine the facts surrounding the known four inch drop-off condition that existed at the time of the accident.
On July 15, 1977, the Department entered into a contract with McDonald for the reconstruction and resurfacing of Highway 153 for a distance of approximately thirteen miles extending from Ashland South to Creston, Louisiana.
According to Wayne Marchand, the project engineer for the Department, the work on the highway began in the fall of 1977. Marchand stated that the subsurface work was completed and an asphalt overlay, two and one-half inches thick, was laid for a distance of six and one-half miles South of Ashland. In March 1978, the two and one-half inch asphalt overlay was completed on the remainder of the project. A second layer of one and one-half inches of asphalt overlay was applied later. This layer was completed May 17, 1978, five days before the accident. Marchand stated that, at the site of the accident, the one and one-half inch layer was laid on May 11, 1978.
*422 Marchand, as project engineer, was in constant contact with the work performed by McDonald. Marchand had inspectors who reported to him daily as the work progressed. Marchand stated that he visited the project approximately every other day. The Department had continuous knowledge of the shoulder condition presented when the asphalt overlay was applied.
The Department contends that it should be absolved from liability due to the fact that the last of the four inch overlay was not completed until May 17, 1978, five days before the accident and it would not be reasonable to require it to bring the shoulder up to grade at an earlier time.
Marchand stated that a contractor normally completes his overlay operation, then cleans and shapes the shoulders and does "his surface course operation." He stated that in this case McDonald brought the shoulder up to grade level and finished the shoulder work along the thirteen miles in six days. This shoulder work was not done until after the accident.
The question arises as to whether the Department performed the duty to protect the public against the hazardous conditions under the facts presented.
A review of this record convinces this court that the trial judge was correct in finding the Department negligent under the circumstances presented. The two and one-half inch overlay, which had created a two and one-half inch drop-off, had been installed on the north half of the project, which would include the site of the accident, in the late fall of 1977. This was approximately six months before the accident. The remainder of the two and one-half inch layer was completed by March 1978. The existence of this two and one-half inch drop-off presented a hazardous condition which was allowed to exist for approximately six months at the site of the accident. Such condition existed along the remainder of the route for approximately two and one-half months before the accident. This court has held that a drop-off of more than two inches created a dangerous condition. Brown v. Louisiana Dept. of Highways, 373 So.2d 605 (La.App. 3rd Cir. 1979), writ den., 376 So.2d 1269 (La.1979). The fact that McDonald installed an additional one and one-half inch only increased the hazardous nature of an existing hazardous condition.
We recognize the necessity of construction work along our highways and that hazards will often necessarily exist during the course of construction. We are aware that the general duty of the Department to maintain the highways in a reasonably safe condition are relaxed somewhat in connection with construction activities. This duty, however, is relaxed according to the reasonable necessities of the circumstances. Hazardous conditions, created by construction work on a highway, must be remedied within a reasonable length of time. It is a breach of the Department's duty to allow a hazardous condition to exist for an unreasonable length of time, particularly when it is within the capability of the Department to eliminate the hazard.
"What constitutes a reasonable time to complete construction and to eliminate construction defects depends upon the circumstances of each case and involves consideration of factors such as the extent of the project, emergencies, availability of materials and manpower, priorities of projects, safety and economic aspects of construction, the nature and degree of the hazard created, the ability to adequately warn, and other factors."
Brandon v. State, Through Dept. of Highways, 367 So.2d 137, 143 (La.App. 2nd Cir. 1979), writs ref'd, 369 So.2d 141 (La.1979).
The record herein falls short of demonstrating that either economic or safety priorities made it impossible or unreasonable for the Department to require its contractor, McDonald, to bring the shoulders up to grade at an earlier time. Good construction practice is set forth in the Department's maintenance manual. The manual provides that anytime shoulders are more than one inch below the road surface they should be brought up to grade.
*423 For the Department to allow the existence of this hazardous condition for the long period of time discussed herein is unreasonable and constitutes negligence.
As to whether such negligence of the Department is a cause in fact of the accident is answered in the case of Sinitiere v. Lavergne, supra, where the Supreme Court held as follows:

"Negligence is only actionable where it is both a cause in fact of the injury and a legal cause of the injury. Legal cause requires a proximate relation between the actions of a defendant and the harm which occurs and such relation must be substantial in character. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905 (La.1973). Using a `but-for' test to determine cause in fact clearly results in a finding that the accident would not have resulted had the road shoulder been substantially even with the travel portion of the road...."
As we apply the "but-for" test to the circumstances herein, we conclude that the negligence of the Department was a cause in fact of the accident. Further, there is a substantial relationship between the failure to correct the highway defect and the automobile accident, the type of risk encountered by Knotts, Jr., and his sister.

LIABILITY OF McDONALD
The contractor, McDonald, in addition to making the same arguments as the Department concerning causation and the question of whether the project was in fact conducted in a negligent manner, argues that it should not be held to share responsibility with the Department. McDonald contends that its responsibility is to fulfill the contract requirements to the satisfaction of the Department. McDonald feels that he should incur no liability since he was following the usual, customary way of doing the work under the contract. This argument lacks merit in that the evidence revealed that the Department in no way mandated a time that the shoulders of the road should be brought up to grade. While the contract provided no specifics on this matter, Section 107.7 of the Standard Specifications for Roads and Bridges, made a part of the contract between the Department and McDonald, states:
"107.7. The contractor shall at all times conduct his work so as to assure the least possible obstruction to traffic.

"When the road under construction is to be kept open for the use of the traveling public, special attention shall be paid to keeping both the subgrade and newly laid surfacing reasonably free from dust and in such condition that the public can travel the road in safety. The safety and convenience of the general public and the residents along the highway and the protection of persons and property shall be a primary responsibility of the contractor." (Emphasis added.)
The jurisprudence holds that anyone contracting with the Department to do road repair is obligated not to expose the traveling public to undue hazards. Hale v. Aetna Casualty & Surety Co., 273 So.2d 860 (La. App. 2nd Cir. 1973), writ den., 275 So.2d 867 (La.1973).
Thus McDonald owed a duty to the public beyond the literal fulfillment of the plans and specifications of its contract with the Department. The difference in elevation between the road and the shoulders was a hazardous condition. It was allowed to continue for an unreasonable length of time. McDonald could not rely on the Department to coerce a proper course of action in every phase of the project but must also bear responsibility for its negligent acts. The same reasoning on cause in fact and legal cause set forth in the discussion of the Department's liability applies to McDonald.
The trial court correctly held McDonald liable.

NEGLIGENCE OF KENNETH KNOTTS, JR.
The trial court found Kenneth Knotts, Jr., was not negligent in the operation of the automobile, citing the case of Rue v. State, Dept. of Highways, 372 So.2d *424 1197 (La.1979), on remand, 376 So.2d 525 (La.App. 3rd Cir. 1979). We conclude the trial court erred in this finding. The testimony of Knotts, Jr., reveals that he was fully aware of the dangerous condition of the shoulder. He had driven the road many times while the improvement project was in progress. He had driven it that morning. He admitted that he was aware that it would be dangerous to allow the car to leave the road surface.
The case of Sinitiere v. Lavergne, supra, discusses the significance of knowledge of the defect on the part of the driver. The Supreme Court states:

"In Rue, supra, this Court stated that a motorist's duty to drive reasonably does not extend to the risk of injury from striking an unexpected and unexpectable hazard resulting from a negligently maintained highway shoulder. The reason for this statement was the jurisprudentially recognized rule that a motorist has a right to assume that highway shoulders are maintained in a reasonably safe manner in the absence of knowledge or reason to know of a defect. This language does not establish the highway shoulder as a `zone of recovery' for every straying motorist. Rather, it states the simple principle that the law will not automatically bar a person from recovery or charge him with liability vis-a-vis third parties where the law does not charge that person with actual or constructive knowledge of an avoidable danger. Thus, if a person is chargeable with knowledge of a shoulder defect that could cause serious injury and, nevertheless, disregards his own safety and the safety of others, the law considers his actions in leaving the main travel portions of the roadway to be a breach of his duty to himself and to the others who can reasonably be expected to be injured by his actions. Rodgers v. Department of Highways, 376 So.2d 1295 ([La.App.] 2nd Cir. 1979); Morrow v. Department of Highways, 377 So.2d 430 ([La.App.] 2nd Cir. 1979)." (Emphasis added.)
Applying these principles to the facts herein, we find that Knotts, Jr., was clearly negligent when he left the highway. Likewise, we conclude that he was negligent upon his re-entry onto the highway. Knotts, Jr., testified that he was traveling approximately 45 miles per hour when he left the hard surface. He stated that he traveled on the shoulder for some distance without slowing his car. He then attempted to re-enter the highway. He lost control as the right wheels came up over the four inch drop-off. The car went across the road and as it came back it overturned, causing the death of his sister.
There is nothing in the record to show that Knotts, Jr., could not have stayed on the shoulder until he had slowed his car enough that re-entry could have been made safely. Under these circumstances, the actions of Knotts, Jr., were negligent in his attempt to make a re-entry without slowing his vehicle.
Having found that Knotts, Jr., was negligent, this means that the portion of the judgment dismissing the suit against Allstate must be reversed. The plaintiffs would be entitled to judgment against Allstate in addition to judgment against the Department and McDonald.

ABILITY OF THE FATHER TO RECOVER, AND DISPOSITION OF THE THIRD PARTY DEMANDS
We have found that, not only was the Department and McDonald guilty of actionable negligence, but also, Knotts, Jr., was likewise guilty of such negligence.
This raises the question of whether the father, Kenneth Knotts, Sr., can recover for damages he suffered, that is, general damages for the loss of the child, automobile damages and funeral expenses.
A minor's concurring causative negligence is not the equivalent of contributory negligence on the part of the father. Article 2318 of the Civil Code, which makes the father liable for damages caused by a minor son who resides with him, does not impute such negligence of the minor son to the *425 father. This article merely attaches financial responsibility to the father for the delicts of his minor child. Deshotel v. Travelers Indemnity Company, 257 La. 567, 243 So.2d 259 (La.1971); Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138 (La.1968). Thus the father, Knotts, Sr., is entitled to recover his damages from the Department and McDonald. Also, he can recover from Allstate, the liability insurer of the vehicle Knotts, Jr., was driving. The father, Knotts, Sr., and Allstate, however, could be held liable for contribution under the third party demands of the Department and McDonald. Scott v. Behrman, 273 So.2d 661 (La.App. 4th Cir. 1973).
As to the third party demands herein, McDonald joined, as third party defendants, Knotts, Sr., Knotts, Jr., and Allstate[2] for contribution for any judgment that may be rendered against him. The Department, however, joined only Knotts, Sr., as third party defendant, seeking contribution for only that part of the judgment that would make an award to Mrs. Knotts. Judgment will be granted in favor of the third party plaintiffs accordingly.

EXCESSIVE GENERAL DAMAGES
The trial judge awarded $75,000.00 each to Mr. and Mrs. Knotts for the loss of their child. The Department and McDonald contend this is excessive.
The trial court, in its reasons for judgment, made the following comments as its reasons for awards:
"The testimony of Kenneth L. Knotts, Sr. and Bettye Cheatwood Knotts, father and mother of the child, and that of Mrs. Lois Penefield and Mrs. Reva Campbell convinced the Court that Kirsten was an unusually gifted, bright, intelligent and talented 11-year-old girl. It is clear from the testimony of these witnesses and from the results of the Stanford Achievement Test that Kirsten was a person of superior capabilities. She possessed the unique qualities of being blessed with the innocence of youth and she had not been hardened by exposure to the adult world and harsh realities of life; while, at the same time, her achievement test results indicated she had attained a school grade equivalent of 10.5 (The equivalent of someone half-way through the tenth grade.) She was her mother's constant companion and a combination sister, tutor, teacher, nurse and loving sibling to her 3-year-old, afflicted brother."
As we consider the principles enunciated in the case of Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), we find the awards herein to be somewhat generous but they are within the very broad discretion accorded trial court judges in fixing awards.
For the reasons set forth herein, that portion of the trial court judgment, dismissing plaintiff's suit against Allstate Insurance Company, is reversed and Allstate Insurance Company shall be cast for judgment along with the Department and McDonald.
The portion of the trial court judgment dismissing the third party demands of McDonald and the Department is reversed and set aside.
As to the third party demand of McDonald, we hereby grant judgment in favor of McDonald and against third party defendants, Knotts, Sr., Knotts, Jr., and Allstate Insurance Company for contribution for the judgment rendered against McDonald. As to the third party demand of the Department, we hereby grant judgment in favor of the Department and against third party defendant, Knotts, Sr., for contribution for only that portion of the judgment rendered in favor of Mrs. Knotts and against the Department.
In all other respects the judgment of the trial court is affirmed.
The liability of Allstate Insurance Company, under the judgment rendered in the main demand, combined with the judgments rendered in the third party demands, shall not exceed its policy limits of $10,000.00.
*426 All costs of this appeal shall be paid one-third by the Department, one-third by J. W. McDonald and one-third by Allstate Insurance Company.
REVERSED IN PART; RE-CAST IN PART; AND AFFIRMED.
NOTES
[1] Knotts, Jr., reached majority after the accident and before trial.
[2] The liability of Allstate shall not exceed its policy limits of $10,000.00.