524 So.2d 1281 (1988)
Patti J. COLEMAN, Plaintiff-Appellee,
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al., Defendants-Appellants.
No. 87-59.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1988.
*1283 C.R. Whitehead, Jr., Natchitoches, for plaintiff-appellee.
Robert L. Oliver, Baton Rouge, for defendant-appellant-appellee.
Watson, Murchsion, Crews, Arthur & Corkern, William P. Crews, Jr., Natchitoches, for defendant-appellee-appellant.
Thomas D. Benoit, Baton Rouge, for intervenor-appellee.
Before DOMENGEAUX, C.J., LABORDE, J. and CULPEPPER, J. Pro Tem.[*]
LABORDE, Judge.
Plaintiff, Patti J. Coleman, was injured in a one-car accident when the car she was driving flipped over at least 1½ times after she unsuccessfully attempted to pass two slower moving vehicles on La. Highway 486. She filed suit against the State of Louisiana, Through the Department of Transportation and Development (DOTD), alleging negligent maintenance of the shoulders along Highway 486. DOTD answered claiming that plaintiff's negligence was the sole cause or a contributing cause of the accident. DOTD further filed a third party demand against Joan Williams and her insurer, State Farm Mutual Automobile Insurance Company, alleging that Williams' negligence caused or was a contributing factor in causing the accident.[1] Williams was the driver of the vehicle immediately preceding plaintiff's vehicle when plaintiff attempted her passing maneuver. At the time of the accident plaintiff was employed by the Natchitoches Parish School Board. The Louisiana State Employees Group Benefits Program intervened in this matter claiming a right to $12,080.31 along with any amounts subsequently paid by them to plaintiff for her disabilities in settlement or judgment based upon this lawsuit.
After trial on the merits, the trial judge held that DOTD was 90% at fault, Williams was 10% at fault, and plaintiff was free from fault. Plaintiff was awarded $530,000.00 in general damages, $12,689.91 in past medical expenses, $10,000.00 in future medical expenses, and $2,000.00 in lost wages. Both defendants, DOTD and Joan Williams, appeal claiming numerous errors, including allegations that plaintiff should have been found to have been contributorily negligent.

FACTS
On February 12, 1985 at about 5 p.m. plaintiff was traveling north on Highway 486 (the "Campti Cutoff Road") in her 1985 Pontiac Trans Am. In front of her was a friend, Joan Williams, who was driving a 1984 Pontiac Trans Am. The plaintiff stated that she was trying to catch up with Williams because she "had something to show her." Both drivers passed one vehicle *1284 and then approached a slower moving vehicle. During this time both parties testified that they were traveling at speeds between 45 and 60 m.p.h. They both claim to have slowed to about 45 m.p.h. when they were behind the slower car. Plaintiff then claims to have started to pass the Williams vehicle in the left lane. When the front of plaintiff's vehicle was about even with the back of Williams' vehicle, plaintiff claims that Williams suddenly veered into the left lane to begin her passing maneuver. To avoid a collision, plaintiff applied her brakes and swerved onto the left shoulder of the road. She claims that she was traveling about 55 m.p.h. before she applied her brakes. The trial judge found that all four of plaintiff's tires left the roadway. Plaintiff traveled along the shoulder for about eighty feet before she attempted to re-enter the highway. When she did attempt to re-enter, her wheels struck a drop-off between the shoulder and the roadway. The drop-off at the point of reentry is claimed to have been anywhere between 1¼ inches to 4 inches in height. This allegedly caused the steering wheel to be "jerked out" of plaintiff's hands. Plaintiff's vehicle then skidded diagonally across the road onto the right shoulder (approximately 130 feet). Her car flipped over at least 1½ times and ejected her completely from the vehicle. Plaintiff suffered a fracture of the L-1 vertebra, facial lacerations and several bruises and contusions about the body.

PRIOR CASES
There is an abundance of jurisprudence dealing with the issue before us today. Plaintiffs who drive their cars onto shoulders uneven with roadways and are subsequently injured when their cars crash are not new to this state. A landmark case in this area is Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979). Later the impact of Rue was somewhat lessened by the holding of Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). Both of these cases were decided in pre-comparative negligence days when a contributorily negligent plaintiff was barred from recovery. Rue held that a plaintiff who ran off of a road onto the shoulder and who was injured in the accident could recover from the State, even if that plaintiff was negligent, if the accident would not have occurred "but for" the State's failure to properly maintain the shoulder. The court held that a driver has a right to assume that a road shoulder is maintained in a reasonably safe condition and can accommodate a vehicle whether intentionally or unintentionally driven upon the shoulder. In Sinitiere, the plaintiff drove onto a shoulder and then attempted to re-enter the highway in an area where there was a substantial drop-off (3½-4 inches) between the road and the shoulder while traveling 35-40 m.p.h. His car veered out of control and into an oncoming vehicle. The court held that he breached the duty of care owed to himself and to others and was a cause in fact of the accident. Plaintiff was thus barred from recovery.
Although Rue and Sinitiere continue to be authoritative, we now look to the rules of comparative negligence in this type of situation. The application of comparative negligence achieves a more equitable result with each party bearing the burden of its proportionate degree of fault. Motton v. Travelers Ins. Co., 484 So.2d 816 (La.App. 1st Cir.1986). We will thus consider the fault or non-fault of each of the parties involved.

FAULT OF DOTD
DOTD has the basic duty to maintain all highways in the state highway system. The maintenance of highway shoulders in a reasonably safe condition is included within the duties of DOTD, and this duty encompasses the obligation to protect a motorist who inadvertently drives onto the shoulder. Although DOTD is not an insurer of the safety of motorists using state highways, it can not knowingly allow a condition to exist which is hazardous to a reasonably prudent motorist. Deville v. State Through Department of Transportation and Development, 498 So.2d 1142, 1144 (La.App. 3d Cir.1986). DOTD may be liable for negligence if it is actually or constructively aware of the hazardous condition *1285 or defect and fails to take corrective action within a reasonable time. DOTD may also be held strictly liable under LSA-C.C. art. 2317 as custodian of a defective shoulder in normal use. Under both a negligence theory of liability or strict liability, liability will hinge on whether or not DOTD breached its duty to the plaintiff. Deville, 498 So.2d at 1144. Thus the State will be liable if it knew of the defect and even if it did not know of the defect under Article 2317. The strict liability of Article 2317 is subject to the defenses of victim fault, fault of a third party, or action by an irresistible force. Guillote v. Department of Transportation & Development, 503 So.2d 618, 621 (La.App. 4th Cir.1987).
The trial court accepted the testimony of the plaintiff's accident reconstruction expert, Mr. S.C. Walker. The court thus found that the drop-off from the blacktop to the road shoulder was a dangerous condition, was a cause in fact of the accident, and was due to the fault of DOTD. The court did not discuss any actual or constructive knowledge of the defect by DOTD and thus apparently held DOTD strictly liable under Article 2317. We find that such a factual finding by the trial court is not manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). We thus affirm the trial court's holding that the shoulder was defective and was a cause of the accident.

FAULT OF PATTI COLEMAN
This accident occurred when Patti Coleman attempted to pass the vehicle driven by Joan Williams and the one preceding Williams. A driver who attempts to pass another vehicle is under a duty to exercise a great deal of care in keeping a lookout and making certain that no change of course of the preceding vehicle is indicated. Morgan v. Lumbermen's Mutual Casualty Co., 317 So.2d 7 (La.App. 1st Cir.1975). In the case at hand the plaintiff had been following the Williams vehicle for a considerable distance. Both cars had already passed one car ahead of them and then approached a second slower moving vehicle.
The trial court held that the plaintiff was confronted with a sudden emergency. The sudden emergency doctrine is available to a person who finds himself in a position of imminent peril and does not have sufficient time to consider and weigh all of the best means available to avoid that impending danger. Such a person is not guilty of negligence if he fails to adopt what subsequently and upon reflection may have been a better means to avoid the peril. Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (La.1972). The doctrine cannot be invoked by one who has brought the emergency on himself by his own wrong or who has not used due care to avoid it. Dick v. Phillips, 253 La. 366, 218 So.2d 299 (La.1969). Although it appears that plaintiff was hastily trying to catch up with Williams' vehicle, we cannot say that the trial court's application of the sudden emergency doctrine was erroneous. Plaintiff apparently had time to honk her horn or apply her brakes. She instead chose to drive onto the shoulder to avoid a collision. We find that the sudden emergency doctrine does apply and excuses any negligence by plaintiff in driving onto the shoulder.
The trial court held that this accident was caused when the plaintiff attempted to steer her vehicle back onto the blacktop portion of the highway, lost control of the vehicle when its tires hit the uneven portion of the shoulder/blacktop and subsequently crashed. We have the advantage of much jurisprudence to help us determine if plaintiff should be attributed with any degree of fault in attempting to re-enter the highway.
Quinn v. State, Through Department of Highways, 464 So.2d 357 (La.App. 3d Cir.), writ denied, 467 So.2d 1134 (La.1985), involved a plaintiff who oversteered when trying to re-enter the highway from the shoulder of the road and who crashed into an oncoming car. The court held that the plaintiff was 20% at fault for improperly responding to a hazard while the Department was 80% at fault for maintaining a defective shoulder. In its reasoning, the court stated:

*1286 "We conclude that at some point before she finally maneuvered her car onto the surface portion of the road, Mrs. Quinn was aware of the dangerous situation confronting her. Being aware of the sudden defect she encountered, Mrs. Quinn breached the duty of reasonable care owed to herself and others when she attempted to re-enter the traveled portion of the highway. Apparently there was nothing to prevent Mrs. Quinn from driving on the shoulder until she reduced her speed. She should have remained on the shoulder until she had reduced her speed enough to safely re-enter the traveled portion of the highway."
Id. at 364. The Quinn court considered a pamphlet entitled "Safe Driving in Louisiana" which directs drivers who run off of roads and onto shoulders not to try to steer back onto the road if they are driving in excess of 20 m.p.h. The court stated that the rule given in the pamphlet is virtually a jurisprudential rule. "Thus, the duty to follow the prescribed course of conduct is legally imposed on drivers whether or not they are familiar with the pamphlet provision." Id. at 365. A similar rule has been stated by the Louisiana Supreme Court:
"Prudent behavior for a motorist who inadvertently drives off the paved roadway onto the shoulder is first to reduce speed and then to attempt a gradual reentry after he has regained control of the vehicle."
Pitre v. Aetna Ins. Co., 456 So.2d 626, 629 (La.1984).
Wise v. Louisiana, Department of Transportation & Development, 470 So.2d 954 (La.App. 3d Cir.), writ denied, 475 So. 2d 1108 (La.1985), involved a plaintiff who veered off of the road onto a shoulder where there was a 2-6 inch drop-off which was held to be a defect. The court barred her from recovery because she was contributorily negligent. The court said that she consciously tried to re-enter the roadway and was fully aware of the potential consequences. The court also said that there was nothing to indicate that the driver could not have remained on the shoulder until she was able to slow down to a safe speed. Knotts v. State, Dept. of High-ways, 395 So.2d 419 (La.App. 3d Cir.), writ denied, 400 So.2d 669 (La.1981), had a similar factual setting. The court found that the driver traveled upon the shoulder for some distance and then tried to re-enter the roadway without slowing down. He lost control as his wheels hit a four inch drop-off. The court found that he was negligent in attempting to re-enter the highway without slowing his vehicle and there was nothing in the record to show that he could not have remained on the shoulder until he was able to slow down sufficiently.
In McDaniel v. State, Through Department of Transportation & Development, 398 So.2d 88 (La.App. 3d Cir.), writ denied, 404 So.2d 277, 279 (La.1981), we stated that we would focus our attention to the facts and circumstances of each case to determine whether the straying motorist breached his duty to drive reasonably. We held the plaintiff in that case to be free from negligence. In considering the facts of the case, we stated:
"We begin by noting that when McDaniel's tires slipped off of the roadway, he did not have the advantage of daylight to illuminate the way before him. Instead it was dusk, almost dark. In addition, the headlights of the approaching vehicles, which only seconds before he believed were coming straight at him, were still beaming towards him adding to his difficulty in seeing the way ahead of him. Also, and very important we think, McDaniel was not traveling along a straightaway when his tires slipped off of the pavement. Instead, he was in the process of negotiating an `S' curve and was traveling on the curve's outside moving to its left. The curve itself, along with its steep pavement-shoulder drop-off, also had a steep shoulder-ditch drop-off."
Id. at 91.
In the matter before us the trial court found that the accident was caused when plaintiff attempted to re-enter the roadway from the shoulder and lost control of her vehicle. The trial court also found that plaintiff was not contributorily negligent. We feel that this finding by the trial court *1287 was manifestly erroneous. As in Quinn, Wise, and Knotts we find no reason that plaintiff could not have remained on the shoulder and stopped or slowed down enough to regain sufficient control of the car. The plaintiff claims that she, for at least part of the time after swerving to miss the Williams vehicle, had applied her brakes or at least had her foot off of the accelerator. If plaintiff had been traveling at an advisable speed when attempting to re-enter the roadway, we hardly feel that her car would have had sufficient force to skid across 2 lanes of the highway, travel 130 feet along the opposite shoulder, and flip over at least 1½ times. We also feel that the factors considered in McDaniel to find that plaintiff free from negligence can be considered as showing that the present plaintiff was in fact, contributorily negligent. There is nothing in the record to indicate that plaintiff was unable to clearly see the condition of the highway before her. Also she was traveling along a straightaway which is further evidence that she should have been able to appreciate the situation and the condition of the roadway.
We, therefore, hold that the trial court's finding that plaintiff was not in any degree negligent was manifestly erroneous. Plaintiff went completely off of the roadway after being confronted with an emergency situation. Rather than completely stopping her car or slowing down enough to gain complete control of her car, she immediately tried to re-enter the highway. These facts can lead us to no other conclusion than that plaintiff was guilty of some degree of contributory negligence.

FAULT OF JOAN WILLIAMS
The trial court found that Joan Williams was negligent for failing to ascertain that she could safely enter the left lane and pass the car in front of her. Movement to the left across or into a traffic lane where normal passing is permitted should not be made without first ascertaining that such a maneuver can be executed safely and without danger to normal overtaking traffic. Sevin v. Diamond M Drilling Co., 261 So.2d 375 (La.App. 1st Cir. 1972). We agree with the trial court's finding that Joan Williams was at fault and was a contributing cause of this accident. Williams' contention that the defective shoulder was an intervening cause of the accident which should negate any liability on her part is without merit.
"An initial tortfeasor will not be relieved of the consequences of his negligence unless the intervening cause superceded the original negligence and alone produced the injury. If the original tortfeasor could or should reasonably foresee the accident that might occur, he would be liable notwithstanding the intervening cause."
Domingue v. State Department of Public Safety, 490 So.2d 772, 775 (La.App. 3d Cir. 1986). We thus hold that Joan Williams steering her vehicle in front of plaintiff's as plaintiff attempted to pass her was a cause in fact of this accident not superceded by the actions of plaintiff or the State.

APPORTIONMENT OF FAULT
We hold that Joan Williams should be attributed with 20% fault in the cause of this accident. We hold that Patti Coleman was, in fact, contributorily negligent and attribute her with 40% of the fault. We hold that DOTD was 40% at fault.

DAMAGES
The trial court found that plaintiff suffered a fracture of the L-1 vertebra which required surgery. The surgical procedure implanted two steel Harrington Rods into her back which ran parallel to her backbone in order to stabilize her back. She had a scar measuring at least one foot in length along her back. She suffered facial lacerations and numerous bruises and contusions about the body. The court found her to have 25-30% permanent disability of the body as a whole. However, the court noted that plaintiff made "a rather dramatic recovery" and missed only four months of work as a tutor for the Natchitoches Parish School Board. She wore a body brace during that time period. The court awarded the following damages:

*1288
Physical pain, suffering
and distress caused by
the broken back and required
surgery $ 75,000
Physical pain, suffering
and distress caused by facial
lacerations $ 5,000
Permanent disability impairment;
loss of motion $300,000
Future pain, suffering
and distress $150,000
Future medical expenses $ 10,000

The court further awarded plaintiff itemized medical expenses totaling $13,226.15 and $2,000 for loss of earnings. The court taxed the bill of plaintiff's expert as court costs. Both appellants claim that the general damage award made by the trial court is excessive.
In considering the propriety of the award made by the trial court, we must determine if the award was a clear abuse of discretion. Reck v. Stevens, 373 So.2d 498 (La.1979.) In reviewing the jurisprudence, we find that the trial court's award of $530,000 in general damages was a clear abuse of its much discretion. The case of Estate of King v. Aetna Casualty and Surety Co., 427 So.2d 902 (La.App. 3d Cir.), writ denied, 433 So.2d 1048 (La.1983), is very similar to the case at hand. That case involved a plaintiff who was injured in a car accident which occurred when another car ran off of the road onto an uneven shoulder, went out of control when its driver tried to re-enter the roadway, and struck the car in which plaintiff was riding. The plaintiff underwent surgery to have pins placed in her back and was required to remain in a body cast for four months. She was awarded $150,000 in general damages. In Schexnayder v. State, 477 So.2d 1175 (La.App. 1 Cir.1985), the plaintiff suffered a t-4 thoracic compression fracture along with several other less severe injuries. She had to wear a body brace for three months. The court reduced her general damage award from $200,000 to $100,000. Also the cases of Aucoin v. Hartford Acc. & Indent. Co., 499 So.2d 1042 (La.App. 3d Cir.1986), and Oshinski v. Central Nat. Ins. Co. of Omaha, 432 So.2d 929 (La.App. 4 Cir.1983), involved plaintiffs with back injuries and degrees of disability similar to the present plaintiff. Each received $150,000 in damages, but both of those awards were inclusive of lost wages and medical expenses. Finally, the case of Boudreaux v. Murray, 489 So.2d 948 (La.App. 5 Cir. 1986), awarded a plaintiff with inflamed tissue in her back and 20% permanent partial disability of her entire body $100,000 in general damages.
After reviewing the facts of the present case along with awards given in other cases we conclude that the general damage award given to plaintiff was excessive. We hold that the highest justifiable general damage award for the plaintiff is $200,000.
For the above reasons assigned, the judgment is amended to reflect our finding of contributory negligence of plaintiff, the increased degree of negligence of Joan Williams, and to reduce plaintiff's general damage award to the highest reasonable amount. Plaintiff's award of past and future medical expenses and lost wages remains $25,226.15. The total damage award is thus $225,226.15 reduced by plaintiff's degree of fault (40%) or $135,135.69.[2] We recast our judgment as follows:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that there be and hereby is judgment in favor of plaintiff, Patti J. Coleman, for $225,226.15. Judgment is against defendant, Joan Williams, for 20% of this amount and against defendant, State of Louisiana, Through Department of Transportation and Development, for 40% of this amount. The remainder of this award is nullified by plaintiff's 40% contributory negligence. Costs of trial and appeal are taxed 20% to Joan Williams,[3] 40% to *1289 State of Louisiana, Through Department of Transportation and Development, and 40% to plaintiff.
Accordingly the trial court's judgment is amended, the damage award is reduced, and the judgment is recast.
AMENDED AND RECAST.
NOTES
[*] Hon. William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] State Farm subsequently agreed to pay its policy limits plus interest (a total of $11,030.00) over to the court in a concursus proceeding in exchange for State Farm being released of any further liability other than its duty to represent Joan Williams. Of this $11,030.00, it was agreed that 75% be paid to plaintiff and 25% to the Louisiana State Employees Group Benefits Program.
[2] The trial court held that if the Board of Trustees of the State Employees' Group Benefit Program accepted 25% of the $11,030.00 deposited by State Farm as full satisfaction of its claim, then it is bound by that agreement. We find nothing in the record to evidence that such an agreement was entered into and thus hold that the Board of Trustees is entitled to collect the remainder owed to it from this judgment.
[3] Williams correctly asserts that her share of the trial court costs should be taken out of the $11,030.00 deposited by State Farm with the court. The total costs assessed by the trial court were $2,864.84. Thus her share or $572.97 should be deducted from this amount. The remainder of the amounts deposited by State Farm is credited to the amount of the judgment owed by Joan Williams.