STOKER, Judge.
These are consolidated suits for damages. A separate opinion will be rendered in Johnnie v. State, Through the Department of Transportation and Development, 558 So.2d 1379 (La.App. 3d Cir.1990).
The suits arise out a single vehicle accident which occurred on April 20, 1985 on Louisiana Highway 35 in Vermilion Parish. The vehicle was driven by Connie Harrington, and Denise Dumond and Crystal Guil-lotte were guest passengers in the vehicle. Ms. Dumond and Penelope Johnnie, individually and on behalf of her minor child, Crystal Guillotte, sued numerous parties, including the State of Louisiana through the Department of Transportation and Development (DOTD). The only parties who have appealed are the plaintiffs and DOTD. DOTD has appealed the trial court’s judgment finding it liable to plaintiffs. Plaintiffs have answered the appeal raising as error the trial court’s apportionment of fault between DOTD and Connie Harrington and the assessment of damages.
FACTS
The trial court’s statement of the facts in its written Reasons for Judgment is adopted hereinbelow as our own:
“All day Saturday, April 20th, 1985, Denise Dumond, Connie Harrington, and Crystal Guillotte attended a barbecue at the home of Norma Vincent located between Cow Island and Kaplan. Later that evening a group of girls decided to attend a male stripper performance scheduled at 9:00 p.m. at the La Chaudi-ere Nightclub in Kaplan. Connie Harrington borrowed her boy friend’s [sic] new car, a 1984 Chevrolet Cavalier. They dropped Crystal off at an arcade gameroom in Kaplan, as she was still a minor.
“Upon arriving at La Chaudiere, the women paid the admission fee of $10.00, which covered free drinks (or reduced prices on certain drinks) and the strip show. After enjoying the show, Ms. Du-mond and Ms. Harrington left the lounge and stopped to pick up Ms. Guillotte around 9:45 p.m. Ms. Harrington was driving the automobile; Ms. Dumond occupied the front passenger’s seat; and Ms. Guillotte was seated in the back, behind the driver.
“Ms. Harrington headed home in a southerly direction on Louisiana Highway 35, which is a two-lane rural blacktop road with gravel shoulders, constructed and maintained by the Department of Transportation and Development. As she was leaving the Kaplan city limits, Ms. Harrington came upon a 1977 GMC Jimmy pick-up truck driven by Russell Campisi, also traveling in a southerly direction. As she approached the first curve outside of town, Ms. Harrington attempted to pass the slower moving Jimmy. However, she was unable to do so because of another curve ahead. After coming out of the curve, Ms. Harrington again sped up to pass the Campisi vehicle. After pulling completely ahead of the Campisi car (but while still in the left lane), Ms. Harrington’s left front tire went off the paved surface and onto the left shoulder. Sparks and gravel flew as Ms. Harrington abruptly pulled to the right across the roadway in front of the Campisi vehicle. Mr. Campi-si was able to safely brake and avoid a collision. Ms. Harrington then hit the right shoulder, where all four (4) tires traveled off the roadway. The Harrington vehicle continued in a generally southern direction along the right shoulder, crossing over the junction with Parish Road 9-57. The front bumper struck the ground at a soft spot just beyond the *1376 Parish Road 9-57 intersection, made a gouge mark, and became airborne for some fifty (50') feet. After the vehicle dropped on its top, it began flipping over on its side for another seventy-nine (79') feet. It finally came to rest straddling the ditch on the right side of the road, sitting upright. All three (3) of the occupants were thrown from the vehicle onto the roadway.
“The evidence indicated that Ms. Harrington over-steered her car and lost control before striking the right-hand shoulder. She did not slow down before attempting to re-enter the left side of the roadway. There was no oncoming traffic nor was there any evidence that the Campisi vehicle ever swerved toward her.
“At the time of the accident, Mr. Cam-pisi had just set his cruise control at fifty-five (55) miles per hour, the posted speed limit. Dr. David Bernard estimated the speed of Ms. Harrington’s vehicle at between 48.5 and 52 miles per hour at the point where she hit the right edge of the roadway.
“The shoulders of road along which this accident occurred had been bladed by the Department of Transportation and Development on April 17th and 19th, 1985 to correct shoulder ruts on the edge of the pavement.
“Ms. Guillotte, who was seriously injured in the accident, has no recollection of the night of the accident. Ms. Harrington remembers attempting to pass the Campisi vehicle the second time; however, she does not recall the accident itself. Ms. Dumond stated that she did not see any oncoming traffic when Ms. Harrington attempted to pass both times, nor did she see the Campisi vehicle swerve. The testimony of Mr. and Mrs. Campisi indicated that the girls in the Harrington vehicle were ‘screaming and hollering’ and honking the horn as they attempted to pass the second time.
“Connie Harrington stated she drank ‘maybe two (2) beers’ after lunch at the barbecue and then drank less than a can later in the afternoon. However, at La Chaudiere she had ‘pretty much’ to drink, although she didn’t recall exactly how much. She did admit to feeling ‘a little high’ after leaving the gameroom, but denied being drunk.
“Denise Dumond stated that neither she nor Ms. Harrington drank before noon at the barbecue, although she did notice Ms. Dumond drank two (2) beers that afternoon. Ms. Dumond stated that Ms. Harrington had a rum and Coke at the La Chaudiere. Norma Vincent testified that she saw Ms. Harrington drink two (2) rum and Cokes at La Chaudiere.”
ACTION OF THE TRIAL COURT
The trial court found that both DOTD and Connie Harrington were at fault in causing plaintiffs’ injuries and apportioned fault at 10% to DOTD and 90% to Connie Harrington. The trial court’s findings of fact as to the issue of causation were as follows:
“The Court feels that the Department was negligent, in that the soft spot on the shoulder directly following the raised intersection of P-9-57 caused enough discontinuity in the shoulder to begin the flipping action of the out of control vehicle. DOTD’s breach of its duty to maintain the shoulder in a reasonably safe manner encompassed the risk of the kind of accident and injury involved here and, therefore, it is strictly liable under LSA-C.C. 2317 for the injuries caused by the discontinuity in the shoulder.
“But the Department’s failure to correct the discontinuity in the shoulder was only one factor in causing the Harrington vehicle to flip over. The evidence indicated that on April 29th, 1985 DOTD inspected the area of the accident after receiving an accident report, and measured the shoulder width at about seven (7') feet. The measurements of Patrick Menard also indicated that the pothole on the apron of P-9-57 was five and [one-] half (5V2') to six (6') feet away from the *1377 edge of the roadway. Dr. Bernard, plaintiffs’ expert witness, testified that the soft spot by itself would not cause the car to flip over if it were going in a straight line, but would if combined with the vaulting action caused by the raised roadway of P-9-57.
“As to the conduct of the driver, Connie Harrington, the Court feels that the great preponderance of the evidence in this case is that Ms. Harrington’s actions were negligent and a major cause-in-faet of the accident. Ms. Harrington had never driven her boy friend’s [sic] new car alone before, and she was feeling the effects of the alcohol she had consumed. She was familiar with Highway 35, as she traveled it regularly. Further, the evidence clearly indicates that she inattentively allowed the front left wheel to stray onto the left shoulder, then over-reacted by cutting sharply in front of the Campisi vehicle. There was no reason why Ms. Harrington could not have sufficiently reduced her speed to allow safe re-entry onto the left side of the roadway, as the left shoulder of Highway 35 was not defective.
“As to Russell Campisi, the Court finds there was no evidence to suggest negligence on his part, nor did his actions in any way cause this accident to happen.”
FAULT OF DOTD
The duty of DOTD with respect to the traveling public was summarized by this court in Coleman v. State, Through the Department of Transportation and Development, 524 So.2d 1281, 1284-1285 (La.App. 3d Cir.1988), as follows:
“DOTD has the basic duty to maintain all highways in the state highway system. The maintenance of highway shoulders in a reasonably safe condition is included within the duties of DOTD, and this duty encompasses the obligation to protect a motorist who inadvertently drives onto the shoulder. Although DOTD is not an insurer of the safety of motorists using state highways, it can not knowingly allow a condition to exist which is hazardous to a reasonably prudent motorist. DOTD may be liable for negligence if it is actually or constructively aware of the hazardous condition or defect and fails to take corrective action within a reasonable time. DOTD may also be held strictly liable under LSA-C.C. art. 2317 as custodian of a defective shoulder in normal use. Under both a negligence theory of liability or strict liability, liability will hinge on whether or not DOTD breached its duty to the plaintiff. Thus the State will be liable if it knew of the defect and even if it did not know of the defect under Article 2317. The strict liability of Article 2317 is subject to the defenses of victim fault, fault of a third party, or action by an ir'restible force.” (Citations omitted.)
Although the record discloses a conflict in the testimony concerning the actual width of the shoulder in question, the trial court found it to be seven feet wide and the soft spot located five and one-half feet to six feet from the edge of the roadway. The trial court concluded that DOTD’s breach of its duty to maintain the shoulder in a reasonably safe manner encompassed the risk of the kind of accident and injury involved in this case.
DOTD argues that the soft spot was not unreasonably dangerous in normal use considering the type and location of the road and its shoulders. Additionally, it contends that in this instance the shoulder was not in normal use. DOTD maintains that Connie Harrington was not merely an inattentive driver who inadvertently steered onto a defective shoulder which caused her to lose control of her vehicle and crash. Rather, Connie Harrington was operating her vehicle under the influence of alcohol, strayed from the road in a passing maneuver and, due to her own negligence, lost control of her vehicle while traveling at an excessive rate of speed under the circumstances. In other words, DOTD’s duty did not encompass the risk of harm which oc *1378 curred under these facts and circumstances.
“The duty to maintain reasonably safe highways and shoulders extends to the protection of those people who may be foreseeably placed in danger by an unreasonably dangerous condition.” Sinitiere v. Lavergne, 391 So.2d 821, 825 (La.1980). DOTD’s negligence must have been both a cause in fact of the injury and a legal cause of the injury for it to be actionable. “Legal cause requires a proximate relation between the actions of a defendant and the harm which occurs and such relation must be substantial in character.” Id at 825.
Using a “but-for” test as the court did in Sinitiere to determine cause in fact does not compel a finding that the accident would not have occurred had the soft spot not been present. The trial court recognized the testimony of plaintiffs expert, Dr. David Bernard, that the soft spot alone would not have caused the Harrington vehicle to flip. His opinion combined a vaulting action over the parish road with the striking of the soft spot to cause the flipping action. State Police Officer John Charles, who investigated the accident shortly after it occurred, determined that all four tires traveled on the right shoulder and tire track marks were noted across the intersecting parish road. However, accepting the trial court’s determination that the soft spot was a cause in fact of the accident, we do not find that there is a substantial relationship between DOTD’s failure to correct the soft spot and the type of risk of an accident which occurred in this case.
The trial court found and we agree that there was no defect in the left shoulder onto which Ms. Harrington first strayed during a passing maneuver which caused her to lose control of her vehicle as she attempted to reenter the roadway. Nor is there any proof of a defect on the right shoulder where Ms. Harrington actually left the roadway completely. Moreover, the record fails to show that Ms. Harrington at any point attempted to reduce her speed, and she traveled quite a distance on the right shoulder before any harm occurred.
Unpaved shoulders such as those along Highway 35 are not intended for vehicular travel, but for temporary emergency stopping. There are approximately 200 miles of roads to be maintained in Vermilion Parish and 99% of those have unpaved shoulders. The shoulders at the site where this accident occurred had been bladed on April 17th and 19th, just days before this accident. The accident occurred on a straight stretch of highway with no impairments to visibility and no oncoming traffic was present at the time.
While DOTD’s duty encompasses the obligation to protect a motorist who inadvertently drives onto a defective shoulder, it is not the insurer of the safety of all motorists using the highways. Coleman, supra. We find that the trial court was clearly wrong in concluding that the duty to maintain shoulders in a reasonably safe condition for reasonably prudent drivers extends to the risk that an inattentive and perhaps alcohol impaired driver would stray from the roadway onto a non-defective shoulder, oversteer and attempt to reenter the roadway at an excessive speed, lose control of her vehicle, leave the roadway entirely and travel on the opposite shoulder for a distance at a speed of 48 mph to 52 mph before hitting a depression in the shoulder five and one-half feet to six feet from the roadway, become airborne, flip and eject the occupants before coming to rest. We find that Ms. Harrington cannot be classified in any sense as a reasonably prudent driver and it was her breach of duty to herself and to her passengers to keep her vehicle under control that was the sole cause of this accident and the resulting damages. DOTD’s duty to maintain road shoulders for a motorist who may stray onto the road shoulder and experience an accident upon encountering a defect in the shoulder does not encompass the risk that a vehicle driver will handle the vehicle in such a manner as described above after *1379 inadvertently running off the shoulder on the left side of the highway. There is no ease of association between DOTD’s duty and the risk encountered.
For these reasons, the judgment of the trial court in favor of plaintiffs and DHHR, on its intervention, and against DOTD is reversed and set aside and all claims against DOTD are dismissed. Those portions of the judgment dismissing plaintiffs’ claims against defendant, Southern Security Insurance Company, and setting expert witness fees are hereby affirmed. That portion of the judgment casting DOTD for costs of the proceeding below is reversed. Costs of the proceeding below and on appeal are assessed equally to the plaintiffs.
REVERSED IN PART; AFFIRMED IN PART.